IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| CURTIS WAGLER, LORI WAGLER, OWEN WAGLER, EMMA WAGLER, and A.W., a minor,<br><br>       Plaintiffs,<br><br>vs.<br>DEPUTY SHERIFF CARLOS LOPEZ; SHERIFF RICH McNAMEE; DEPUTY SHERIFF CHAD DOAK; ZACH WHITE; and HENRY COUNTY; JOHN/JANE DOES 1-10,<br>       Defendants. | NO. 3:25-cv-0019-RGE-WPK<br><br>**DEFENDANTS' LOPEZ, MCNAMEE, DOAK, AND WHITE'S BRIEF IN SUPPORT OF MOTION TO DISMISS ALL CLAIMS** |

## Table of Contents

**Introduction** ....................................................................................................1
**Summary of Relevant Facts** ...........................................................................1
  1. The Players ...............................................................................................1
  2. The Events Leading Up to the Search and Arrest ...........................................2
  3. The Search and Arrest ...............................................................................3
  4. The Events After the Search and Arrest .......................................................3
  5. The Claims ...............................................................................................5
**Standard of Review** .........................................................................................6
**Argument** ........................................................................................................6
  1. Defendant Deputy Doak should be dismissed because all claims against him are insufficiently pled ......................................................................................6
  2. All constitutional claims must be dismissed .................................................8
    a. All claims under the Iowa Constitution fail under *Burnett*.........................8
    b. The Law Enforcement Defendants are entitled to qualified immunity for all federal constitutional claims..............................................................9
  3. All common law tort claims fail the heightened pleading standard under the Iowa Municipal Tort Claims Act ........................................................................11
    a. The Waglers fail to state a claim for malicious prosecution ....................12
    b. The Waglers fail to state a claim for battery or assault ..........................13
  4. The Waglers fail to state a claim under Iowa's open records laws ....................14
**Conclusion**....................................................................................................16

**Introduction**

This case is about a search warrant's lawful execution and the subsequent arrest of three individuals after a thorough investigation concerning the individuals' business practices. On April 21, 2023, Henry County Sheriff's Deputies searched the home and business of Plaintiffs Curtis Wagler, Lori Wagler, Owen Wagler, Emma Wagler, and A.W. (collectively, "the Waglers"). The search resulted in the arrest of Curtis Wagler, Lori Wagler, and Owen Wagler who were later released from jail the same day. The Waglers now allege that the April 21 search and seizure was unlawful and have brought suit against Defendants Sheriff Rich McNamee, Deputy Sheriff Carlos Lopez, Deputy Sheriff Chad Doak, and Jailer Zach White (collectively, "the Law Enforcement Defendants"). However, all of the Waglers' claims against the Law Enforcement Defendants are insufficiently pled. Because the Waglers fail to sufficiently plead their claims, the Law Enforcement Defendants move to dismiss their complaint in its entirety.

**Summary of Relevant Facts**

**1. The Players**

The Wagler family includes the following:

- Curtis Wagler ("Curtis"), husband to Lori Wagler and father of Owen Wagler, Emma Wagler, and A.W.

- Lori Wagler ("Lori"), wife to Curtis Wagler and mother of Owen Wagler, Emma Wagler, and A.W.

- Owen Wagler ("Owen"), son and oldest child of Curtis and Lori.

- Emma Wagler ("Emma"), daughter and middle child of Curtis and Lori.

- A.W., daughter and youngest child of Curtis and Lori.

The Law Enforcement Defendants include the following:

- Sheriff Rich McNamee ("Sheriff McNamee").

- Deputy Sheriff Carlos Lopez ("Deputy Lopez").

- Deputy Sheriff Chad Doak ("Deputy Doak").

- Jailer Zach White ("Jailer White").

Other relevant players include:

- Outdoor Tradition Company ("Outdoor Traditions"), the Wagler's family lumber business.

- County Attorney Darin Stater ("County Attorney Stater").

- Assistant County Attorney Blake Vierra ("Assistant County Attorney Vierra").

- Magistrate Timothy Liechty ("Magistrate Liechty").

**2. The Events Leading Up to the Search and Arrest**

On April 18, 2023, Deputy Lopez sought approval of a search warrant regarding a criminal investigation of the Waglers' family-owned business, Outdoor Traditions.[1] Over the course of at least seven months, the Henry County Sheriff's Department investigated theft and fraud allegations made by customers that Outdoor Traditions failed to deliver certain products.[2] Deputy Lopez presented the warrant for approval to search of the Wagler home and business; to search Curtis, Lori, and Owen; and to seize "books, records, receipts, notes, ledgers, and other papers and electronic devices used/relating to the business of Outdoor Traditions" as well as "electronically stored records, lock box, and safes."[3] The warrant contained some handwritten portions.[4] Those handwritten

---

[1] ECF No. 1-1, at ¶ 49(a) (General Allegations – pg. 12).
[2] *Id.*; Exhibit A (Signed Warrant) at pgs. 3-5.
[3] ECF No. 1-1, at ¶¶ 13-16 (General Allegations – pgs. 8-9); Ex. A at pgs. 1-2.
[4] ECF No. 1-1, at ¶ 16 (General Allegations – pg. 9); ¶¶ 77-78, 93-94 (Causes of Action – pgs. 16-17).

portions were initialed in three places by Magistrate Liechty with "TBL."[5] Ultimately, Assistant County Attorney Vierra signed off in approval of the warrant,[6] and finding the information Deputy Lopez included in the warrant justified probable cause, Magistrate Liechty also signed the warrant in approval.[7]

### 3. The Search and Arrest

On April 21, 2023 at around 7:30am, Henry County Sheriff Deputies executed the warrant at the Wagler home and business.[8] All five members of the Wagler family were present during the warrant's execution.[9] During the search, the Waglers allege that deputies searched Emma and A.W.'s bookbags, seized money from the daughters, and seized one daughter's laptop.[10] Deputies placed Curtis and Lori in a law enforcement vehicle.[11] Owen was handcuffed and also placed in a law enforcement vehicle.[12]

### 4. The Events After the Search and Arrest

Curtis, Lori, and Owen were transported to the Sheriff's Office for processing.[13] The Waglers allege that Jailer White conducted two cavity searches of Curtis.[14] The Waglers claim they were told they would be held until Monday when they could see a judge, and they allege the Law Enforcement Defendants "planned to hold Curtis, Lori, and Owen over the weekend to intentionally traumatize, inconvenience, embarrass, and burden them."[15] However, they appeared before a judge by 5pm on April 21—the same

---

[5] Ex. A at pgs. 1, 7.
[6] ECF No. 1-1, at ¶¶ 18, 49(b) (General Allegations – pg. 9, 12); Ex. A at pg. 2.
[7] *Id.* at pgs. 2, 6. 8.
[8] ECF No. 1-1, at ¶¶ 11, 13-16 (General Allegations – pgs. 8-9).
[9] *Id.* at ¶¶ 20-22 (General Allegations – pg. 9).
[10] *Id.* at ¶¶ 23-24 (General Allegations – pg. 9).
[11] *Id.* at ¶ 20 (General Allegations – pg. 9).
[12] *Id.* at ¶ 21 (General Allegations – pg. 9).
[13] *Id.* at ¶ 25 (General Allegations – pg. 9).
[14] *Id.* at ¶¶ 26-27 (General Allegations – pgs. 9-10); ¶ 127 (Causes of Action – pg. 20).
[15] *Id.* at ¶¶ 28-29 (General Allegations – pg. 10).

day as their arrest—and were ultimately released shortly after.[16]

Since their arrest, the Waglers assert that Deputy Lopez "commenced a smear campaign against the Waglers and contacted [their] customers claiming they were being scammed and defrauded."[17] The Waglers allege that both Sheriff McNamee and Deputy Lopez accused them of being a "criminal enterprise" at public meetings.[18] They allege that on two occasions, the Henry County Sheriff's Office issued press releases related to Curtis, Lori, and Owen's arrest and that they were charged with nine or ten felonies.[19]

On May 7, 2024, the Wagler's attorney made an open records request for "documents and communications relating to [Deputy] Lopez's placement on the County's Brady-Giglio list, along with records relating to the county attorney's decision not to prosecute the Waglers in a dismissed criminal case."[20] Sheriff McNamee handled the request.[21] Sheriff McNamee hired a private law firm to assist with the request.[22] Five records were disclosed, and all other records were withheld as confidential.[23]

Now, the Waglers assert that Deputy Lopez's warrant lacked probable cause and that no reasonable officer would have believed there was probable cause.[24] They allege that the warrant contained "at least one false statement" by Deputy Lopez.[25] They also assert that the Law Enforcement Defendants did not have probable cause to support the

---

[16] *Id.* at ¶¶ 30, 32-34 (General Allegations – pg. 10).

[17] *Id.* at ¶ 38 (General Allegations – pg. 11).

[18] *Id.* at ¶ 39 (General Allegations – pg. 11).

[19] *Id.* at ¶ 3 (Introduction – pg. 5); ¶ 45 (General Allegations – pg. 11); ¶ 120 (Causes of Action – pg. 20).

[20] *Id.* at ¶ 146 (Causes of Action – pg. 22).

[21] *Id.* at ¶ 147 (Causes of Action – pg. 22).

[22] *Id.* at ¶ 150 (Causes of Action – pg. 23).

[23] *Id.* at ¶¶ 153, 155 (Causes of Action – pg. 23).

[24] *Id.* at ¶ 12 (General Allegations – pg. 8).

[25] *Id.* at ¶¶ 48, 49(g)-(h) (General Allegations – pg. 11-13); ¶¶ 70, 84, 105 (Causes of Action – pgs. 15-16, 18).

arrest.[26] In particular, they claim that Deputy Lopez's decision to arrest the Waglers "was based on directionally motivated reasoning and his confirmation bias."[27] Though County Attorney Stater later dismissed the charges against the Waglers, the criminal investigation remains ongoing.[28]

### 5. The Claims

The Waglers make nine claims against the Law Enforcement Defendants:

| The Waglers' Claims Against the Law Enforcement Defendants[29] | | | |
|---|---|---|---|
| Claim No. | Claim | Which Waglers | Which Law Enforcement Defendants |
| 1 | Unlawful and False Arrest under United States and Iowa Constitutions | Curtis, Lori, and Owen | Deputy Lopez, Sheriff McNamee |
| 2 | Improper and Illegal Search under United States and Iowa Constitutions | Curtis, Lori, and Owen | Deputy Lopez, Deputy Doak, Sheriff McNamee |
| 3 | Improper and Illegal Search under United States and Iowa Constitutions | Emma and A.W. | Deputy Lopez, Deputy Doak, Sheriff McNamee |
| 4 | Malicious Prosecution | Curtis, Lori, and Owen | Deputy Lopez, Deputy Doak, Sheriff McNamee |
| 5 | Defamation | Curtis, Lori, and Owen | Deputy Lopez, Sheriff McNamee |
| 6 | Battery | Curtis, Lori, and Owen | Deputy Lopez, Jailer White |
| 7 | Assault | Curtis, Lori, and Owen | Deputy Lopez, Jailer White |
| 8 | Intentional Infliction of Emotional Distress | All Waglers | All Law Enforcement Defendants |
| 9 | Violations of Iowa Open Records Laws and Iowa Constitution | Curtis, Lori, and Owen | Sheriff McNamee |

---

[26] *Id.* at ¶ 58 (General Allegations – pg. 14).
[27] *Id.* at ¶ 41 (General Allegations – pg. 11).
[28] *Id.* at ¶¶ 40, 57 (General Allegations – pgs. 11, 13).
[29] *See generally*, ECF No. 1-1 at pgs. 4-25.

## Standard of Review

The Law Enforcement Defendants move to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under 12(b)(6), a complaint may only survive a motion to dismiss if it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007) (quotations omitted)); *Edwards v. City of Florissant*, 58 F.4th 372, 376 (8th Cir. 2023); *Thornton v. American Interstate Ins*., No. 1:23-cv-00032-RGE-WPK, 2024 WL 3431344, at *2 (S.D. Iowa May 31, 2024). Plausibility requires the plaintiff plead facts allowing the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Christopherson v. Bushner,* 33 F.4th 495, 499 (8th Cir. 2022) (quoting *Iqbal*, 556 U.S. at 678) (quotations omitted). While the Court views the factual allegations outlined in the non-moving party's complaint as true, threadbare recitals of elements and conclusory statements do not suffice. *Metro. Omaha Prop. Owners Assn. v. City of Omaha*, 991 F.3d 880, 884 (8th Cir. 2021) (citing *Iqbal*, 556 U.S. at 678); *Banks v. Iowa Dept. Hum. Servs.,* No. 4:18-cv-00201-RGE-CFB*,* 2018 WL 10124647, at *2 (S.D. Iowa Sept. 20, 2018). When a complaint "pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility." *Christopherson*, 33 F.4th at 499 (quoting *Iqbal*, 556 U.S. at 678 (internal quotations omitted)); *Banks,* 2018 WL 10124647, at *2.

## Argument

### 1. Defendant Deputy Doak should be dismissed because all claims against him are insufficiently pled.

To sufficiently plead a claim under *Twombly* and *Iqbal*, the Waglers' complaint must state a plausible claim for relief. *See Iqbal*, 556 U.S. at 678. To state a plausible

claim for relief, they must show there is "more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556). And if they fail to "nudg[e] their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570. In particular with constitutional claims, "[g]overnment officials are personally liable only for their own misconduct." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (citations omitted). The Waglers must show "each individual defendant's personal involvement in the alleged violation." *White v. Jackson*, 865 F.3d 1064, 1081 (8th Cir. 2017) (citations omitted).

Here, the Waglers fail to allege any claims against Deputy Doak that meet the demanding *Twombly-Iqbal* plausibility standard. The Waglers bring four claims against Deputy Doak: two claims of improper and illegal search, one claim of malicious prosecution, and one claim for intentional infliction of emotional distress. However, in their entire 22-page complaint, Deputy Doak is mentioned only *once* in the body of the Complaint.[30] And in this singular mention of Deputy Doak, all the Waglers do is describe that he is an officer employed by Henry County and that he is being sued in his individual and official capacity. Deputy Doak is noticeably missing from both the "General Allegations" and the "Causes of Action" portions of the complaint.[31] The complaint is devoid of facts alleging any misconduct on the part of Deputy Doak. Therefore, the Waglers fail to sufficiently plead Deputy Doak's involvement, and all claims against Deputy Doak should be dismissed.

---

[30] ECF No. 1-1, at ¶ 7 (Parties – pg. 6).
[31] *See id.* at pgs. 7-24.

**2. All constitutional claims must be dismissed.**

The Waglers allege the Law Enforcement Defendants violated their rights under both the Iowa Constitution and the United States Constitution. Their allegations stem primarily from the search warrant's execution and the subsequent arrest of Curtis, Lori, and Owen. For the search warrant's execution and arrest, they allege they were unlawfully searched and seized. Additionally, they allege that Sheriff McNamee's manner in handling their open records request violated the Iowa Constitution's "alter or reform provision." Despite these allegations, all the Wagler's constitution claims are insufficiently pled; therefore, all constitutional claims alleged against Sheriff McNamee, Deputy Lopez, and Deputy Doak should be dismissed.

### a.  All claims under the Iowa Constitution fail under *Burnett*.

The Waglers allege violations of Article I, Section 2 (the alter or reform provision)[32] and Article I, Section 8 (the right against unreasonable searches and seizures)[33] of the Iowa Constitution. Such claims must be dismissed because the Iowa Supreme Court "no longer recognizes a standalone cause of action for money damages under the Iowa Constitution unless authorized by the common law, an Iowa statute, or the express terms of a provision of the Iowa Constitution." *Burnett v. Smith*, 990 N.W.2d 289, 307 (Iowa 2023) (affirming dismissal of unreasonable seizure claim under Iowa Constitution Article I, Section 8); *see also, Valdivia v. Porsch*, 718 F.Supp.3d 919, 926-27 (S.D. Iowa 2024) (dismissing state constitution claims for unlawful search and seizure pursuant to *Burnett*); *Wagner v. State*, No. 22-1625, 2025 WL 1006819, at *4-6 (Iowa April 4, 2025) (holding

---

[32] ECF No. 1-1, at ¶ 159 (Causes of Action – pg. 24).
[33] *Id.* at ¶¶ 66, 81, 97 (Causes of Action – pgs. 14, 16, 18)

*Burnett* applies retroactively). Therefore, all claims under the Iowa Constitution should be dismissed.

### b. The Law Enforcement Defendants are entitled to qualified immunity for all federal constitutional claims.

Qualified immunity is "an immunity from suit rather than a mere defense to liability." *Pearson v. Callahan*, 555. U.S. 223, 231 (2009). Therefore, questions regarding qualified immunity should be addressed at the earliest possible time. *Id.* at 232. Qualified immunity applies to government officials like the Law Enforcement Defendants. *See id.* at 231. The Law Enforcement Defendants are entitled to qualified immunity from federal constitutional claims unless the Waglers can prove that (1) they violated a federal constitutional right, *and* (2) the unlawfulness of their conduct was clearly established at the time of the alleged violation. *T.S.H. v. Green*, 996 F.3d 915, 918 (8th Cir. 2021) (citations omitted). For a right to be clearly established, the "existing precedent must have placed the statutory or constitutional question *beyond debate.*" *Davitt v. Spindler-Krage*, 96 F.4th 1068, 1071 (8th Cir. 2024) (citations and quotations omitted) (emphasis added). "[T]he right must be sufficiently clear such that every reasonable official would have understood that what he is doing violates that right." *Id.* (cleaned up). Liability for such conduct "generally turns on the objective legal reasonableness of the action…assessed in light of the legal rules that were clearly established at the time it was taken." *Id.* (cleaned up). Put differently, rather than a generalized analysis, the Court must consider "whether the official acted reasonably in the particular circumstances that he or she faced." *T.S.H.,* 996 F.3d at 918 (citation and quotations omitted). "Specificity of the rule is especially important in the Fourth Amendment context." *Id.* (cleaned up).

Here, the Law Enforcement Defendants are entitled to qualified immunity on all federal constitutional claims. First, the Waglers fail to establish that the Law Enforcement Defendants violated their Fourth Amendment rights. After over seven months of investigation, on April 18, 2023, Deputy Lopez sought approval of the search warrant at issue.[34] The warrant sought authorization to (1) search of the Wagler's home and business; (2) to search Curtis, Lori, and Owen; and (3) to seize "books, records, receipts, notes, ledgers, and other papers and electronic devices used/relating to the business of Outdoor Traditions" as well as "electronically stored records, lock box, and safes."[35] Assistant County Attorney Vierra signed the warrant in approval.[36] Finding the information Deputy Lopez included in the warrant justified probable cause, Magistrate Liechty also signed the warrant in approval.[37] Further, though, as the Wagler's correctly state, the warrant had handwritten portions,[38] those portions were initialed by Magistrate Liechty with "TBL."[39] The Waglers claim an alleged false statement regarding one customer of Outdoor Traditions invalidates the warrant; however, considering these circumstances—the length of investigation, the warrant's particularity, and the signatures of the Assistant County Attorney and the Magistrate Judge—it was reasonable for the Law Enforcement Defendants to believe they had probable cause. Even if probable cause did not exist, the Law Enforcement Defendants had at least arguable probable cause given the circumstances. *See Nieters v. Holtan*, 83 F.4th 1099, 1106 (8th Cir. 2023) ("Even without

---

[34] ECF No. 1-1, at ¶ 49(a) (General Allegations – pg. 12); Ex. A at pgs. 3-5.
[35] ECF No. 1-1, at ¶¶ 13-16 (General Allegations – pgs. 8-9).
[36] *Id.* at ¶¶ 18, 49(b) (General Allegations – pg. 9, 12); Ex. A at pg. 2.
[37] *Id.* at pgs. 2, 6. 8.
[38] ECF No. 1-1, at ¶ 16 (General Allegations – pg. 9); ¶¶ 77-78, 93-94 (Causes of Action – pgs. 16-17).
[39] Ex. A at pgs. 1, 7.

probable cause, an officer will be entitled to qualified immunity if there is at least arguable probable cause.").

Second, the Waglers fail to plead that any alleged constitutional violation was "clearly established" at the time of the conduct took place. The Waglers fail to identify any case law or any other authority to support their claims that officers acting pursuant to a seven-month long investigation that culminated in a search warrant signed by not only an assistant county attorney but also a magistrate judge violated clearly established Fourth Amendment principals. Because the facts alleged do not establish that the Law Enforcement Defendants violated the Waglers' constitutional rights, or alternatively that a violation was "clearly established" by the law at the time, the Law Enforcement Defendants are entitled to qualified immunity.

### 3. All common law tort claims fail the heightened pleading standard under the Iowa Municipal Tort Claims Act.

The Iowa Municipal Tort Claims Act ("IMTCA") places a heightened pleading requirement on all plaintiffs—like the Waglers—who bring tort claims against municipal officers. Iowa Code § 670.4A(3). This heightened pleading requirement has three parts. First, the Waglers must "state with particularity the circumstances constituting the violation." *Id.* Second, the Waglers must plead "a plausible violation" of the law. *Id.* Third, the Waglers "must state . . . that the law was clearly established at the time of the alleged violation." *Id.* "Ultimately, section 670.4A provides that the failure to plead a plausible violation or that the law was clearly established will 'result in dismissal with prejudice.'" *Nahas v. Polk Cnty.*, 991 N.W.2d 770, 777 (Iowa 2023) (quoting § 670.4A(3)).

"Plausibility determinations are highly context-specific, and they demand the reviewing court to draw on its judicial experience and common sense." *Id.* at 782 (citation

and quotations omitted). Pleadings that merely plead facts consistent with a defendant's liability do not satisfy the plausibility standard for a motion to dismiss for failure to state a claim. *Id.* The purpose behind the particularity standard is "'to enable the defendant to respond specifically and quickly to the potentially damaging allegations.'" *Id.* (quoting *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)). When particularity and plausibility are absent from pleadings, no further inquiry is necessary, and dismissal is mandated by statute. *See* § 670.4A(3).

Here, even though the Waglers drafted a lengthy complaint, their complaint fails to satisfy the heightened pleadings standard of Iowa Code § 670.4A. The Waglers allege malicious prosecution, defamation, battery, assault, and intentional infliction of emotional distress; however, the Waglers entirely fail to allege in support of any of their common law tort claims that the law was "clearly established" at the time of the alleged violations. Therefore, all common law tort claims necessarily fail the heighted pleading standard and should be dismissed with prejudice. In addition to the failure to plead the "clearly established" element, the Wagler's malicious prosecution, battery, and assault claims fail for other reasons outlined below.

### a. The Waglers fail to state a claim for malicious prosecution.

To survive a motion to dismiss a claim of malicious prosecution, the Waglers must plead six things: "(1) previous prosecution; (2) instigation of the prosecution by the defendant; (3) termination of the prosecution by acquittal or discharge of the plaintiff; (4) want of probable cause; (5) malice by the defendant in bringing the prosecution; and (6) damages to the plaintiff." *Carter v. Ludwick*, 724 F.Supp.3d 774, 815 (S.D. Iowa 2024) (citing *Wilson v. Hayes,* 464 N.W.2d 250, 259 (Iowa 1990)). Because the Law

Enforcement Defendants are public officials, the Waglers must plead "actual malice," which means that the Law Enforcement Defendants acted with "'malice in fact, ill-will, or wrongful motive.'" *Id.* (quoting *Moser v. Black Hawk Cnty.*, 300 N.W.2d 150, 152 (Iowa 1981)) (internal quotations omitted). Since malicious prosecution claims are disfavored, "the requirements are strictly construed against the plaintiff." *Id.* (citing *Wilson,* 464 N.W.2d at 259).

Here, the Waglers merely plead facts consistent with the Law Enforcement Defendants' liability. The Waglers list each of the elements required to make out a claim as outlined above, but outside of the recitation of the elements, the Waglers plead only one additional statement that the Law Enforcement Defendants allegedly made false statements in obtaining the search warrant.[40] This is insufficient to meet the strict demands of "actual malice," thus failing the plausibility standard. *See Carter,* 724 F.Supp.3d at 815 (dismissing Plaintiff's malicious prosecution claim because he failed to sufficiently allege actual malice). Therefore, in addition to the failure to plead the "clearly established" element, the Waglers fail to state a claim because actual malice is insufficiently plead, so their malicious prosecution claim should be dismissed.

### b.  The Waglers fail to state a claim for battery or assault.

To survive a motion to dismiss a battery claim, the Waglers must plead two things: (1) the Law Enforcement Defendants intended to cause a harmful or offensive contact with the Waglers or to place the Waglers in an imminent apprehension of such a contact, and (2) a harmful contact with the Waglers occurred. *Tinius v. Carroll Cnty. Sheriff Dept.*, 321 F.Supp.2d 1064, 1080 (N.D. Iowa 2004). To survive a motion to dismiss an assault

---

[40] ECF No. 1-1, at ¶ 105 (Causes of Action – pg. 18).

claim, the Waglers must plead two things: (1) the Law Enforcement Defendants intended to cause a harmful or offensive contact with the Waglers or to place the Waglers in an imminent apprehension of such a contact, and (2) the Waglers were put in imminent apprehension. *Id.*

Here, the Waglers claim Deputy Lopez and Jailer White battered and assaulted them; however, because their allegations fail to meet the heightened pleading standard, their battery and assault claims should be dismissed. Though the complaint does allege Curtis was subjected to cavity searches[41] and that Owen was handcuffed,[42] the complaint lacks facts related to any harmful or offensive contact with Lori. Further, while the complaint does allege that Jailer White performed the alleged cavity searches, the complaint lacks any facts related to Deputy Lopez at any point contacting or attempting to contact any of the Waglers. Instead, the Waglers, again, merely plead facts consistent with the Law Enforcement Defendants' liability, which is insufficient to meet the demanding requirements of the IMTCA. Therefore, in addition to the failure to plead the "clearly established" element, the Waglers fail to plead battery and assault claims with particularity, so such claims should be dismissed.

**4. The Waglers fail to state a claim under Iowa's open records laws.**

Iowa Code Chapter 22 governs Iowa's open records law. Iowa Code § 22.10(1) allows citizens to "seek judicial enforcement of the requirements of [Chapter 22] in an action brought against the lawful custodian and any other persons who would be appropriate defendants under the circumstances." If the plaintiffs can demonstrate that

---

[41] ECF No. 1-1, at ¶¶ 26-27 (General Allegations – pgs. 9-10); ¶¶ 127-128 (Causes of Action – pgs. 20-21).
[42] *Id.* at ¶ 21 (General Allegations – pg. 9).

the defendant is subject to Chapter 22, that the records sought are government records, and that the defendant refused to make those records available to the plaintiffs, then the burden shifts to the defendant to show compliance with Chapter 22. Iowa Code § 22.10(2). Relief may only be awarded "[u]pon a finding by a preponderance of the evidence that a lawful custodian has violated any provision of [Chapter 22]." Iowa Code § 22.10(3).

Here, the Waglers seek records regarding (1) the County Attorney's decision not to prosecute them in the criminal case and (2) the County Attorney's decision to place Deputy Lopez on the Brady-Giglio list.[43] However, the Waglers fail to state an open records violation against Sheriff McNamee because they fail to allege he was the lawful custodian of the records sought, and even if he was the lawful custodian, exceptions apply to prevent the records disclosure.

First, the Waglers fail to allege Sheriff McNamee was the lawful custodian of all the records sought. Both sets of records requested concern the decisions of County Attorney Stater—not Sheriff McNamee. While Sheriff McNamee may have had lawful possession of some related records—as Sheriff McNamee did ultimately disclose some records to the Waglers[44]—County Attorney Stater would be in the best position to provide records related to *his* decisions. Because the Waglers fail to allege Sheriff McNamee is the lawful custodian of any other records sought, no claim can be sustained against him.

Second, even if Sheriff McNamee was the lawful custodian, there are exceptions to prevent the disclosure of such records. To the extent the Waglers seek records related to their criminal case, those records have been properly withheld as confidential pursuant

---

[43] ECF No. 1-1, at ¶ 146 (Causes of Action – pg. 22).
[44] *Id.* at ¶¶ 153, 155 (Causes of Action – pg. 23).

to Iowa Code § 22.7(5), which provides an exception for records by law enforcement agencies that is part of an ongoing investigation. The Waglers are subject to an ongoing investigation,[45] so certain records cannot be disclosed without jeopardizing that investigation. To the extent that the Waglers seek records related to Deputy Lopez's placement on the Brady-Giglio list, those records have been properly withheld as confidential pursuant to Iowa Code §§ 22.7(11)(a), 80F.1(20), and 80F.1(24)(f). Iowa Code § 22.7(11)(a) prevents the disclosure of personal information in an officer's confidential personnel record. Iowa Code § 80F.1(20) requires an officer's employing agency "keep an officer's statement, recordings, or transcripts of any interviews or disciplinary proceedings, and any complaints made against an officer confidential unless otherwise provided by law or with the officer's written consent." Iowa Code § 80F.1(24)(f) requires that prosecuting agencies "keep confidential and shall not release to the public an officer's personnel file, medical records, or any statement, recording, transcript, or complaint protected under subsection 20, to the public." The additional records the Waglers request cannot be disclosed without violating Deputy Lopez's rights under Iowa Code §§ 22.7(11)(a) and 80F. Therefore, even if the Court determines that Sheriff McNamee is the lawful custodian of other responsive records, exceptions for confidentiality exist for the remaining records sought, so no claim under Iowa Code Chapter 22 can be sustained against Sheriff McNamee.

## Conclusion

The Waglers complaint fails to state any claims against the Law Enforcement Defendants for which relief may be granted. *First*, Deputy Doak must be dismissed

---

[45] ECF No. 1-1, at ¶ 57 (General Allegations – pg. 13).

because all claims against him have been insufficiently pled. *Second*, all constitutional claims must be dismissed because (1) *Burnett* foreclosed all claims based on the Iowa constitution; and (2) the Law Enforcement Defendants are entitled to qualified immunity on all federal claims. *Third*, none of the common law tort claims can survive the new heightened pleading standard in the IMTCA. *Fourth*, no open records claim can be sustained against Sheriff McNamee because either he is not the lawful custodian of the requested records or a confidentiality exception applies. For these reasons, the Law Enforcement Defendants ask this Court to dismiss the complaint in its entirety.

　　/s/ Mohammad H. Sheronick　　　　　　
MOHAMMAD H. SHERONICK, AT0007169
MADISON P. HUNTZINGER, AT0016094
　　　　Of
LYNCH DALLAS, P.C.
316 2nd Street SE Suite 124
P.O. Box 2457
Cedar Rapids, Iowa 52406-2457
Telephone　319.365.9101
Facsimile　319.365.9512
E-Mail　　　msheronick@lynchdallas.com
　　　　　　mhuntzinger@lynchdallas.com

ATTORNEYS FOR DEFENDANTS LOPEZ,
MCNAMEE, DOAK, AND WHITE

23-005353

Case #: 23-005353

SWSW001473

**State of Iowa, County of HENRY**

**APPLICATION FOR SEARCH WARRANT**

Being duly sworn, I, the undersigned, say that at the place (and on the person(s) and in the vehicle(s)) described as follows:



*picture from drive-by on April 18, 2023*

& 1068 110th Street, Wayland, Iowa 52654

1068 110th Street, Wayland    C.A.L.  TBL

1) Business at ~~Wapello Drive, Mount Pleasant~~ IA, described as multiple metal buildings and a hoop building and any other detached buildings/structures.

2) Residence of █████████████████ described as a blue and white, single story, with attached garage, and any other detached buildings/structures.

3) Person of CURTIS DEAN WAGLER █████████, white male

4) Person of LORI BETH WAGLER █████████, white female

5) Person of OWEN THOMAS WAGLER █████████ white male

FILED
5/24/2023 @11:48am
CLERK DISTRICT COURT
HENRY COUNTY, IOWA
BS

Page 1 of 9

23-005353

In HENRY County, there is now certain property to be seized, namely:

1. Books, records, receipts, notes, ledgers, and other papers and electronic devices used/relating to the business of Outdoor Traditions.

which is: 2. lock box & safes with currency

(X)  Property used or possessed with the intent to be used as the means of committing a public offense or concealed to prevent an offense from being discovered.

(X)  Property relevant and material as evidence in a criminal prosecution.

The facts establishing the foregoing ground(s) for issuance of a search warrant are as set forth in the attachment(s) which are made part of this application.

44-12

_____
Applicant

Subscribed and sworn to before me this

9th day of April , 2023

_____
Magistrate/Judge

____Eighth____  Judicial District
____HENRY____ County, Iowa

WHEREFORE, the undersigned asks that a Search Warrant be issued.

By:_____
Assistant County Attorney

EXHIBIT A - Page 2

23-005353

Attachment A

Affiant's name: Carlos A. Lopez Jr.

Occupation: Deputy Sheriff          No. of yrs: 3+

Assignment: Patrol          No. of yrs: 3+

Your affiant has been a State of Iowa certified police officer since September 16, 2020. Your affiant has been employed with the Henry County Sheriff's Office since March 2020 and assigned as a Deputy since March 2020.

Your affiant conducted an investigation, and received information from other officers and/or other sources as follows:

The following is a theft and ongoing criminal conduct investigation pertaining to Curtis Wagler, Lori Wagler, and Owen Wagler of Wayland, Iowa, residing at ██████████████████████ ██████ and working out of 1068 110th Street, Wayland, Iowa 52654 and resideing at ████████████████████

1. On September 6, 2022, the Henry County Sheriff's Office received a call from █████████ ██████████ that Outdoor Traditions had scammed/stole approximately $3,000. ████████ paid for wood material and as of April 13, 2023, there been no received product or refund in money. ██████████████████████ has tried to contact Outdoor Traditions multiple times and have been ignored.

2. On December 12, 2022, the Henry County Sheriff's Office received a call from █████████ ████████ that Outdoor Traditions had scammed/stole approximately $54,363 in November of 2022. ████████████ paid for wood material and as of March 30, 2023, there been no received product or refund in money. ████████████████ has tried to contact Outdoor Traditions multiple times and have been ignored.

3. On March 13, 2023, the Henry County Sheriff's Office received a call from █████████████ that Outdoor Traditions had scammed/stole approximately $8,000 in October of 2022. ██████ █████ paid for wood material and as of March 30, 2023, there been no received product or refund in money. ████████████ has tried to contact Outdoor Traditions multiple times and have been ignored.

4. On March 13, 2023, the Henry County Sheriff's Office started a call service regarding a complaint from ████████████████ that Outdoor Traditions had scammed/stole approximately $10,000 in January of 2023. ██████████████████ paid for wood material and as of March 30, 2023, there been no received product or refund in money. ████████ ██████ has tried to contact Outdoor Traditions multiple times and have been ignored.

Page 3 of 9

23-005353



5. On March 13, 2023, the Henry County Sheriff's Office started a call service regarding a complaint from ▉▉▉▉▉▉▉▉▉▉ that Outdoor Traditions had scammed/stole approximately $6,000 in 2022. ▉▉▉▉▉▉▉ paid for wood material and as of March 30, 2023, there been no received product or refund in money. ▉▉▉▉▉▉▉▉ has tried to contact Outdoor Traditions multiple times and have been ignored.

6. On March 13, 2023, the Henry County Sheriff's Office started a call service regarding a complaint from ▉▉▉▉▉▉▉▉▉▉ that Outdoor Traditions had scammed/stole approximately $15,400 in December of 2022. ▉▉▉▉▉▉▉ paid for wood material and as of April 10, 2023, there been no received product or refund in money. ▉▉▉▉▉▉ has tried to contact Outdoor Traditions multiple times and have been ignored.

7. On March 13, 2023, the Henry County Sheriff's Office started a call service regarding a complaint from ▉▉▉▉▉▉▉▉▉▉ that Outdoor Traditions had scammed/stole approximately $6,622 in October of 2022. ▉▉▉▉▉▉▉▉ paid for wood material and as of March 29, 2023, there been no received product or refund in money. ▉▉▉▉▉▉▉▉▉ has tried to contact Outdoor Traditions multiple times and have been ignored.

8. On April 5, 2023, the Henry County Sheriff's Office received a call from ▉▉▉▉▉▉▉ that Outdoor Traditions had scammed/stole approximately $13,000 in February of 2023. ▉▉▉▉ paid for wood material and as of April 5, 2023, there been no received product or refund in money. ▉▉▉▉▉▉▉▉ has tried to contact Outdoor Traditions multiple times and have been ignored.

9. From reviewing all the above cases I have found that Lori Wagler, Curtis Wagler, and Owen Wagler have all played a part in the deception that Outdoor Traditions would supply wood products for money.

10. There have been text messages, emails, and phone conversations used for communication from Outdoor Traditions to the above cases. from all three individuals .

11. From my experience as a deputy, and in conversation with other law enforcement officers, I know that those involved in theft and scamming often store their money, and uses of communications in their residences, in residences of those they are associated with, and in other secure locations that they have access to (including businesses, storage units, and vehicles).

12. In my experience, I am aware that people who commit theft and scamming often have cash on hand, assets by investing in stocks, bonds, etc., and by placing assets in safety deposit boxes or similarly secured locations.

13. From my experience as a deputy, and in conversation with other law enforcement officers . I have learned it is common for people who commit theft and scamming to maintain books, records, receipts, notes, ledgers, receipts relating to the purchase or sells of products.

Page **4** of **9**

EXHIBIT A - Page 4

23-005353

14. Based on my training and experience, along with conversation with other Law Enforcement Officers, I have learned that individuals will often use cellular telephones to electronically communicate the contents and/or details of their criminal enterprises by such means as voice mails, text messages, and e-mail. I know that persons involved in the criminal activity such as that described above will often maintain address/contact entries, e-mail messages, text messages, voice mail messages, calendar entries, notes, audio recordings, digital photographs, and digital videos which document their involvement in such criminal activity on their cellular telephones and/or with their wireless service providers. I know that this type of information is routinely kept for extended periods of time and that the above-described activity is consistent with the use of cellular telephones in such criminal enterprises.

15. Therefore, based on the aforementioned investigative information, I am therefore requesting a search warrant for the following location(s) and person:

- Business at 1658 Wapello Drive, Mount Pleasant, IA, and any other detached buildings/structures.
- Residence of ▮▮▮▮
- Person of CURTIS DEAN WAGLER ▮▮▮▮▮▮ white male
- Person of LORI BETH WAGLER ▮▮▮▮▮ white female
- Person of OWEN THOMAS WAGLER ▮▮▮▮▮ white male
- Cellphones/electronic devises owned by Curtis, Lori, and Owen.

16. In light of the nature of this investigation and this affidavit, this affiant requests that this affidavit be sealed until further order of the court upon completion of the investigation.

23-005353

## ENDORSEMENT ON SEARCH WARRANT APPLICATION

1. In issuing this search warrant, I relied on the following:

    __X__   1. Sworn testimony from the affiant(s) as reflected in Attachment A.
    __X__
    __ 2. Attachments: _B_
    _____   3. Statement(s) attributed to the informant(s) as outlined in the attachments.

2. The court relied upon the following witnesses:

    Name:     Deputy Carlos A Lopez Jr. 44-12
    Address:   800 S. Grand Ave., Mount Pleasant, Iowa, 52641

3. Abstract of Testimony. (As set forth in the application and the attachments thereto, plus the following information.)

4. The undersigned has relied, at least in part, on information supplied by a confidential informant (who need not be named) to the peace officer(s) shown on Attachment(s) ___

5. The information (is/is not) found to justify probable cause.

6. I therefore (do/do not) issue the warrant.

                                   _____
                                   Magistrate / Judge
                                   Eighth Judicial District
                                   Henry County, Iowa

Page 6 of 9

EXHIBIT A - Page 6

23-005353

Case #: 23-005353

SWSW001473

### State of Iowa, County of HENRY

### APPLICATION FOR SEARCH WARRANT

Being duly sworn, I, the undersigned, say that at the place (and on the person(s) and in the vehicle(s)) described as follows:



*picture from drive-by on April 18, 2023*

& 1068 110th Street, Wayland, Iowa 52654

*1068 110th Street, Wayland    C.A.L.  TBL*

1) Business at ~~1354~~ Wapello Drive, Mount Pleasant, IA, described as multiple metal buildings and a hoop building and any other detached buildings/structures.

2) Residence of ▮▮▮▮▮▮▮▮▮▮ described as a blue and white, single story, with attached garage, and any other detached buildings/structures.

3) Person of CURTIS DEAN WAGLER ▮▮▮▮▮▮ white male

4) Person of LORI BETH WAGLER ▮▮▮▮▮▮ white female

5) Person of OWEN THOMAS WAGLER ▮▮▮▮▮▮ white male

FILED
5/11/2023 @ 11:48am
CLERK DISTRICT COURT
HENRY COUNTY IOWA
PS

In HENRY County, there is now certain property to be seized, namely: *electronically stored records.*

    1) Books, records, receipts, notes, ledgers, and other papers and electronic devices used/relating to the business of Outdoor Traditions.

which is:      *lock box + safes with currency  C.A.L. TBL*

Page 7 of 9

23-005353

(X)  Property used or possessed with the intent to be used as the means of committing a public offense or concealed to prevent an offense from being discovered.

(X)  Property relevant and material as evidence in a criminal prosecution.

The facts establishing the foregoing ground(s) for issuance of a search warrant are as set forth in the attachment(s) which are made part of this application.

Your Affiant or his designee will take custody of the phone device, phone data/computer media, and/or the articles needed for analysis after all exhibits are properly logged.  The exhibits will be physically examined, documented, the storage devices forensically imaged or copied (if necessary), and later examined for evidence of these crimes.  The RETURN portion of this warrant will reflect the actual seizure of articles.  The forensic imaging and examination will exceed ten days or more based on (1) the high volume of data to be processed and examined; (2) the technical requirements and processes required to conduct complete and accurate examinations; but all results will be submitted as evidence at a later date.

THEREFORE, you are hereby commanded to make immediate search of the described place (and person(s) and vehicle(s)) for the specified property: to seize the specified property if found, leaving a receipt for the seized property at the place of the search; to prepare a written inventory of the property seized; to return this warrant together with the written inventory; and to bring the seized property before the Court.

Dated this ___18___ day of ___April___, 2023

_____

Judge or Magistrate

_____Eighth_____Judicial District

_____HENRY_____County, Iowa

Page 8 of 9

EXHIBIT A - Page 8

23-005353

## Attachment B:

The cell phone(s) associated with Curtis Wagler, Lori Wagler, and Owen Wagler, as well and all information pertained in these phones. A complete examination, by mean of a Universal Forensic Extraction Device(s) (UFED) manufactured by DataPilot and/or Cellbrite, making a complete copy of any internal and/or expanded memory including but not limited to SIM Cards, MircoSD Cards and Cloud based servers where files and data from the device are stored on server spaces commonly referred to as the cloud. If the device is not compatible and no extraction can be conducted with the UFED a manual review will be conducted. If the device is damaged at the time of the examination, it is authorized for the law enforcement agency to make any needed repairs to said device in order complete the examination. A complete copy of the content of said mobile phone, smart phone, tablet, GPS/Mapping device, mass storage device or PDA device consisting of extraction of any and all available data contained therein, including but not limited to: service provider, subscriber information, phone number, security passcode by means of forensic extraction from the device or supplied by the device's owner, phonebook/contact information (including name, picture, address, phone number(s), and all other associated data), pictures, videos, SMS/text messages, chats or instant messaging utilizing applications(Facebook, Kik, Snapchat and other instant messaging applications), GPS location information, cell towner information, wireless network information stored on the device, stored user account information, incoming/outgoing/miscellaneous call logs (including phone number, name, caller ID information, date/time stamp and call duration), voicemail messages either stored on the device or on the provider network and if required a voicemail password reset by the provider, GPS location information stored on the device, ringtones, audio files, ESN (electronic serial number for CDMA phones), IMEI (international mobile equipment identity for GSM phones), ICCID (integrated circuit card identification), and IMSI (international mobile subscriber identification). The examination may include extracting and cloning data directly from any available SIM cards, SD cards, MicroSD cards or cloud based servers associated with the mobile phone, smart phone, GPS/Mapping device or PDA, which may result in additional data including but not limited to: integrated circuit card identification (ICCID), international mobile subscriber identification (IMSI), authentication key (Ki), local area identity (LAI), operator-specific emergency number, SMSC (short message service center) number, service provider name (SPN), service dialing numbers (SDN), advice-of-charge parameters, value added service (VAS) applications, software and application software installation and operation media, internet history, browser history, letters, correspondence, memoranda, journals, electronic mail (e-mail), image (picture) files, database files, deleted items, partial files, or other types of files found in the media and deleted SMS/text messages. Extracted data may be copied from said mobile phone, smart phone, GPS/Mapping device or PDA and associated SIM cards, SD cards, MicoSD cards or cloud based servers and organized into a report. In a circumstance where the mobile phone, smart phone, GPS/Mapping device, PDA and/or associated SIM card, SD card, microSD card or cloud based servers seized may contain digital information, the peace officers are hereby authorized to make a bit by bit physical copy providing a digital image of said items. This will be done in order to facilitate a forensic examination of the image in a laboratory setting without altering the original data.