IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | |
|---|---|
| CURTIS WAGLER, LORI WAGLER, OWEN WAGLER, EMMA WAGLER, and A.W., a minor,<br><br>　　　　　Plaintiffs,<br><br>v.<br><br>CARLOS LOPEZ, RICH MCNAMEE, CHAD DOAK, ZACH WHITE, HENRY COUNTY, IOWA, and JOHN and JANE DOES 1–10,<br><br>　　　　　Defendants. | No. 3:25-cv-00019-RGE-WPK<br><br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS** |

## I.    INTRODUCTION

Plaintiffs Curtis Wagler, Lori Wagler, Owen Wagler, Emma Wagler, and A.W., a minor, sue Defendants Carlos Lopez, Rich McNamee, Chad Doak, Zach White, Henry County, Iowa, and John and Jane Does 1–10. Plaintiffs' claims arise from a 2023 search of Plaintiffs' home and business; the arrest of Curtis, Lori, and Owen Wagler; and the aftermath of the criminal investigation and prosecution.

Defendants move to dismiss all claims asserted against them, arguing Plaintiffs have failed to state claims upon which relief may be granted. Plaintiffs resist. For the reasons set forth below, the Court grants in part and denies in part Defendants' motions to dismiss.

## II.    BACKGROUND

### A.    Factual Background

The Court accepts the following facts alleged in the petition as true for the purpose of considering Defendants' motions to dismiss. *See Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 848 (8th Cir. 2014). The Court also considers in its analysis of the motions to dismiss

"matters incorporated by reference [in the petition] or integral to the claim, items subject to judicial notice, [and] matters of public record." *United States ex rel. Ambrosecchia v. Paddock Labs., LLC*, 855 F.3d 949, 954 (8th Cir. 2007) (second alteration in original) (internal quotation marks and citation omitted). Plaintiffs rely on a search warrant and affidavit authorizing the search of their home and business to establish claims for improper and illegal search (Counts II and III) and malicious prosecution (Count IV) in their petition. *See* Pet. ¶¶ 69–108, ECF No. 1-1. In support of their claims against Defendants, Plaintiffs allege the search warrant "relied on a sworn affidavit that had at least one false statement," "omitted material facts," "lacked particularity," and "was procured without probable cause." *Id.* ¶ 70, 74–75, 79, 84, 88, 91, 95. Further, Plaintiffs cite to the contents of the search warrant in support of their claims. *Id.* ¶¶ 70–71, 76–78, 84–85, 92–94. The search warrant is integral to Plaintiffs' claims for relief against Defendants. Therefore, the Court considers the search warrant authorizing the search of Plaintiffs' home and business for purposes of evaluating the motions to dismiss.

The Waglers operate Outdoor Tradition Co., a family-owned lumber business. ECF No. 1-1 ¶ 6. Over the course of several months, the Henry County Sheriff's Department investigated theft and fraud allegations made by customers of Outdoor Tradition for failure to deliver products. *Id.* ¶ 49.

Lopez sought approval for a search warrant related to the Outdoor Tradition investigation. *Id.* The search warrant application requested to search Curtis, Lori, and Owen Wagler; the Plaintiffs' business and residence; the books, records, and other items related to the Plaintiffs' business; a lock box and safe with currency; electronic devices; and electronically stored records. Ex. A Supp. Defs.' Lopez, McNamee, Doak, & White's Mot. Dismiss 1–2, 5, 9, ECF No. 13-1; *see* ECF No. 1-1 ¶¶ 13–17. The application contained handwritten portions. ECF No. 13-1 at 1–2. An Assistant County Attorney signed the search warrant application and a Magistrate Judge

approved the search warrant. *Id.* at 2, 6. The Assistant County Attorney instructed Lopez to bring in any evidence seized pursuant to the search warrant so the office could "determine if criminal activity was occurring." ECF No. 1-1 ¶ 49.

On April 21, 2023, Lopez and approximately seven other armed law enforcement officers executed the search warrant on Plaintiffs' home and business. *Id.* ¶ 11. During the search, officers searched Emma Wagler's and A.W.'s bookbags and seized A.W.'s laptop and money belonging to Emma Wagler and A.W. *Id.* ¶¶ 23–24. Curtis, Lori, and Owen Wagler were advised they were not under arrest, but were placed into police vehicles and transported to the Henry County Sheriff's Office for processing. *Id.* ¶ 25. Owen Wagler was handcuffed. *Id.* ¶ 21.

At the Sheriff's Office, White conducted two cavity searches of Curtis Wagler. *Id.* ¶¶ 26–27. The cavity searches included searches of Curtis Wagler's anus. *Id.* ¶ 27. Plaintiffs assert Law Enforcement Defendants planned to hold Curtis, Lori, and Owen Wagler over the weekend to "intentionally traumatize, inconvenience, embarrass, and burden them." *Id.* ¶ 29.[1] Curtis, Lori, and Owen Wagler were released the same day as their arrest after a detention hearing. *Id.* ¶ 34.

Plaintiffs assert Lopez's decision to arrest Curtis, Lori, and Owen Wagler "was based on directionally motivated reasoning and his confirmation bias lead [sic] him to act prematurely without a legal basis." *Id.* ¶ 41. They claim Lopez disregarded instructions and generally accepted procedures that require an investigation prior to making an arrest. *Id.* ¶ 42. This is evidenced by Curtis, Lori, and Owen Wagler's arrest prior to the analysis of evidence seized during the execution of the search warrant. *Id.* ¶ 44. Curtis, Lori, and Owen Wagler maintain they were arrested without probable cause. *Id.* ¶ 58.

---

[1] Lopez, McNamee, Doak, and White are collectively referred to as "Law Enforcement Defendants."

After the search of Plaintiffs' home and business and the arrests of Curtis, Lori, and Owen Wagler, Lopez contacted Plaintiffs' customers about being scammed and defrauded. *Id.* ¶ 38. McNamee and Lopez accused Plaintiffs of conducting a criminal enterprise during public meetings. *Id.* ¶ 39. Lopez and the Henry County Sheriff's Office issued at least two press releases stating Curtis, Lori, and Owen Wagler had been arrested and falsely stating each had been charged with nine felony thefts. *Id.* ¶¶ 45, 49, 120.

In the spring of 2023, the criminal charges against Plaintiffs were dismissed by Henry County Attorney Darin R. Stater. *Id.* ¶ 40; Pls.' Resist. Defs. Lopez, McNamee, Doak, & White's Mot. Dismiss, ECF No. 20. Stater sent a letter to McNamee advising he was declining to prosecute Plaintiffs due to "a lack of evidence" and "false statements in Lopez's affidavits." ECF No. 20 ¶ 48. The letter also stated Stater "ha[d] not been presented with any evidence to support any criminal charge on any of the Waglers." ECF No. 1-1 ¶ 49.

Plaintiffs claim Lopez knew a statement about a failure to deliver products, which he included on the search warrant application, was false. *Id.* ¶¶ 71–72, 85–86. They also claim the search warrant application omitted material facts about pending small claims cases. *Id.* ¶¶ 74–76, 79–80, 91–92, 95–96.

Lopez was placed on Henry County's Brady-Giglio list based upon his actions on April 21, 2023. *Id.* ¶ 54. Plaintiffs made open records requests to Henry County for public records pertaining to Lopez's placement on the Brady-Giglio list and the County Attorney's decision not to prosecute them. *Id.* ¶ 146. McNamee handled the requests. *Id.* ¶ 148.

Plaintiffs seek compensatory damages, punitive damages, attorneys' fees, and interests and costs. ECF No. 1-1 at 21. Plaintiffs also seek an injunction requiring McNamee and Henry County to release documents and communications related to Lopez's placement on the Brady-Giglio list and records related to the County Attorney's decision not to prosecute them. *Id.*

Additional facts are set forth below as necessary.

### B.    Procedural Background

Plaintiffs filed a nine-count petition in the Iowa District Court for Henry County, alleging unlawful and false arrest as to Curtis, Lori, and Owen Wagler (Count I); improper and illegal search as to Curtis, Lori, and Owen Wagler (Count II); improper and illegal search as to Emma Wagler and A.W. (Count III); malicious prosecution as to Curtis, Lori, and Owen Wagler (Count IV); defamation as to Curtis, Lori, and Owen Wagler (Count V); battery as to Curtis, Lori, and Owen Wagler (Count VI); assault as to Curtis, Lori, and Owen Wagler (Count VII); intentional infliction of emotional distress as to all Plaintiffs (Count VIII); and violations of Iowa's Open Records Act as to Curtis, Lori, and Owen Wagler (Count IX). ECF No. 1-1 ¶¶ 64–161. Lopez, McNamee, Doak, and White removed the case. Defs. Lopez, McNamee, Doak, & White's Notice Removal, ECF No. 1.

Henry County and Law Enforcement Defendants move to dismiss all counts under Federal Rule of Civil Procedure 12(b)(6). Def. Henry Cnty.'s Mot. Dismiss, ECF No. 11; Defs. Lopez, McNamee, Doak, & White's Mot. Dismiss, ECF No. 13. Plaintiffs resist in part. Pls.' Resist. Def. Henry Cnty.'s Mot. Dismiss, ECF No. 19; ECF No. 20.[2] The parties did not request oral argument and the Court declines to order it, finding the parties' briefing adequately presents the issues. *See* Fed. R. Civ. P. 78(b); LR 7(c).

Having considered the parties' briefing and applicable law, the Court grants in part and denies in part the motions to dismiss for the reasons set forth below.

### III.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

---

[2] The Court notes Defendants John and Jane Does 1–10 are not represented in Defendants' motions to dismiss. *See generally* ECF No. 11; ECF No. 13.

accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009). "The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian*, 760 F.3d at 848 (quoting *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999)). The Court must accept as true all factual allegations in the complaint, but not its legal conclusions. *Iqbal*, 556 U.S. at 678–79 (citing *Twombly*, 550 U.S. at 555–56).

A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. A plaintiff must "nudge[] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

In ruling on a Rule 12(b)(6) motion to dismiss, a court's review is limited to the complaint, "matters incorporated by reference or integral to the claim, items subject to judicial notice, [and] matters of public record." *United States ex rel. Ambrosecchia*, 855 F.3d at 954.[3] Matters "outside the pleading" are not considered, including "any written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate

---

[3] Matters of public record include publicly accessible state court documents. *See Levy v. Ohl*, 477 F.3d 988, 991 (8th Cir. 2007); *cf. James v. Kruger*, No. 4:17-cv-00303-RGE, 2018 WL 11272271, at *1 (S.D. Iowa Apr. 4, 2018) ("The Court [ ] takes judicial notice of the public records available in the electronic case databases maintained by the Iowa Judicial Branch." (citations omitted)).

what is said in the pleadings." *Gibb v. Scott*, 958 F.2d 814, 816 (8th Cir. 1992) (quoting 5C Charles Alan Wright, et al., Federal Practice and Procedure § 1366); *see also Summers Mfg. Co., Inc. v. Tri-Cnty. AG, LLC*, 300 F. Supp. 3d 1025, 1035 (S.D. Iowa 2017) (collecting cases).

In a removal action, the federal pleading standards govern both a plaintiff's federal and state law claims. *See* Fed. R. Civ. P. 81(c)(1) (providing the Federal Rules of Civil Procedure apply to civil actions removed from state court); *Karnatcheva v. JPMorgan Chase Bank, N.A.*, 704 F.3d 545, 548 (8th Cir. 2013) ("We apply federal pleading standards—Rules 8 and 12(b)(6)—to the state substantive law to determine if a complaint makes out a claim under state law." (citations omitted)); *Christiansen v. W. Branch Cmty. Sch. Dist.*, 674 F.3d 927, 938–39 (8th Cir. 2012) ("By including federal claims in [the] state-court complaint, [the plaintiff] subjected [themselves] to the possibility that the defendant[] would remove the case to federal court, where [the] complaint would be governed by the current federal pleading standard." (internal quotation marks and citations omitted)).

## IV.    DISCUSSION

The Court first considers the claims alleged against Henry County, then turns to the claims alleged against Law Enforcement Defendants. The Court then addresses Plaintiffs' request to amend their petition.

### A.    Henry County

#### 1.    Counts I–III

In Count I of their petition, Curtis, Lori, and Owen Wagler allege Henry County is liable for their arrests in violation of the Iowa Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. ECF No. 1-1 ¶¶ 64–68. In Count II, Curtis, Lori, and Owen Wagler allege Henry County is liable for the improper and illegal search conducted in violation of the Iowa Constitution and the Fourth and Fourteenth Amendments to the United States

Constitution. *Id.* ¶¶ 69–82. In Count III, Emma Wagler and A.W. allege Henry County is liable for the improper and illegal search conducted in violation of the Iowa Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 83–98.

Plaintiffs agreed to dismiss the Iowa constitutional claims alleged against Henry County. ECF No. 19 at 5 ("Plaintiffs agree to dismiss their State Constitutional claims against the County without prejudice."). Therefore, the Court grants Henry County's motion to dismiss the Iowa constitutional claims alleged against Henry County in Counts I–III.

In addition to the Iowa constitutional claims, Plaintiffs also alleged violations of their Fourth and Fourteenth Amendment rights under the United States Constitution. Plaintiffs did not agree to dismiss these § 1983 federal constitutional claims of *Monell* liability, and, in its reply, Henry County conceded "that the facts as alleged by the Plaintiffs in the petition are likely sufficient for Plaintiffs to survive a Rule 12(b)(6) pre-answer motion to dismiss the *Monell* claims in Counts I, II and III[]." Def. Henry Cnty.'s Reply Supp. Mot. Dismiss 3, ECF No. 22. However, no *Monell* claim may proceed without an underlying constitutional violation by a person acting pursuant to a policy or custom. *Partridge v. City of Benton, Arkansas*, 157 F.4th 970, 973–74 (8th Cir. 2025) (affirming "liability may not be imposed where no municipal official or employee committed a constitutional violation") (collecting cases). The Court concludes Plaintiffs fail to allege sufficient facts to support a showing that identified Law Enforcement Defendants and unidentified Doe Defendants committed a constitutional violation in Count II. *See* discussion *infra* Section IV.B.2.b, IV.C. Therefore, no underlying constitutional violation by individual officers remains in Count II with which to attach *Monell* liability to Henry County. Because no underlying constitutional violation remains in Count II with which to attach *Monell* liability to Henry County, the Court grants Henry County's motion to dismiss Count II.

Because both Plaintiffs and Henry County agree Plaintiffs' facts as alleged in the Petition

are sufficient to survive Henry County's motion to dismiss, the Court denies Henry County's motion to dismiss the federal constitutional claims alleged against Henry County in Counts I and III.

### 2.    Counts IV, V, and VIII

In Count IV of their petition, Curtis, Lori, and Owen Wagler allege a claim of malicious prosecution against Henry County. ECF No. 1-1 ¶¶ 99–108. In Count V, Curtis, Lori, and Owen Wagler allege a claim of defamation against Henry County. ECF No. 1-1 ¶¶ 109–22. In Count VIII, all Plaintiffs allege a claim of intentional infliction of emotional distress against all Defendants. ECF No. 1-1 ¶¶ 138–43.

Plaintiffs agreed to dismiss the state common law claims alleged against Henry County. ECF No. 19 at 5 ("Plaintiffs agree to dismiss their common law claims against the County without prejudice."). Therefore, the Court grants Henry County's motion to dismiss the state common law claims alleged against Henry County in Counts IV, V, and VIII.[4]

### 3.    Count IX

In Count IX of their petition, Curtis, Lori, and Owen Wagler allege Henry County violated Iowa's Open Records Act and Article I, § 2 of the Iowa Constitution. ECF No. 1-1 ¶¶ 144–161.

Plaintiffs agreed to dismiss the Iowa constitutional claims alleged against Henry County. ECF No. 19 at 5 ("Plaintiffs agree to dismiss their State Constitutional claims against the County without prejudice."). Therefore, the Court grants Henry County's motion to dismiss the Iowa constitutional claim alleged against Henry County in Count IX.

Henry County did not move to dismiss Plaintiffs' Open Records Act claim alleged pursuant to Iowa Code § 22.7, nor did it provide argument to support dismissal of the claim. *See generally*

---

[4] To the extent Plaintiffs allege state common law claims in other counts, the Court grants Henry County's motion to dismiss those state common law claims. *See* ECF No. 22 at 2 n.2.

ECF No. 11; ECF No. 22. As such, the Iowa Open Records Act claim alleged in Count IX against Henry County remains viable.

### B.    Law Enforcement Defendants

In evaluating Law Enforcement Defendants' motion to dismiss, the Court first addresses whether Plaintiffs sufficiently plead claims against Doak. The Court then analyzes Plaintiffs' other constitutional claims, common law tort claims, [5] and Iowa Open Records Act claims.

### 1.    Doak

Doak argues the claims alleged against him are insufficiently pleaded. Plaintiffs allege claims of improper and illegal search (Counts II and III), malicious prosecution (Count IV), and intentional infliction of emotional distress (Count VIII) against Doak. *See* ECF No. 1-1 ¶¶ 69–108, 138–43.

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party 'fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved.'" *Topchian,* 760 F.3d at 848 (quoting *Hopkins*, 199 F.3d at 973). A plausible claim for relief "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A plaintiff must "nudge[] their claims across the line from conceivable to plausible, [else] their complaint must be dismissed." *Twombly*, 550 U.S. at 570. A plausible claim simply asserts enough facts to raise a reasonable expectation that discovery will reveal evidence of the elements necessary to the claim.

---

[5] Law Enforcement Defendants correctly note the Iowa Supreme Court's recent ruling in *Doe v. Western Dubuque Community School District* held the Iowa Municipal Tort Claims Act's heightened pleading standard, codified at Iowa Code § 670.4A, does not apply to state common law tort claims. 20 N.W.3d 798, 806 (Iowa 2025), *as amended* (July 10, 2025); *see* Law Enforcement Defs.' Reply Supp. Mot. Dismiss 3, ECF No. 21. Therefore, the Court need not address Law Enforcement Defendants' heightened pleading standard arguments as they relate to the state common law tort claims alleged against them.

*Id.* at 556.

Plaintiffs sufficiently plead claims against Doak because they adequately put Doak on notice of the claims asserted against him and nudge the claims across the line from conceivable to plausible. *Cf. Topchian,* 760 F.3d at 848; *Twombly*, 550 U.S. at 570. Doak argues Plaintiffs' claims are insufficiently pleaded because there is no mention of Doak's name in the body of the petition. Br. Supp. Defs. Lopez, McNamee, Doak, & White's Mot. Dismiss ECF No. 13-1 at 7. Doak fails to account for Plaintiffs' factual assertions as to all Defendants. Plaintiffs allege Defendants, including Doak, executed a search warrant without probable cause, thereby violating Plaintiffs' state and federal constitutional rights. ECF No. 1-1 ¶¶ 79–82, 95–98. Plaintiffs also allege Defendants, including Doak, acted without probable cause in executing the search warrant, resulting in Plaintiffs' malicious prosecution. *Id.* ¶¶ 99–108 (Count IV). Finally, Plaintiffs allege all Defendants, including Doak, engaged in outrageous conduct through the execution of illegal searches and seizures that resulted in Plaintiffs' emotional distress. *Id.* ¶¶ 138–143. Doak has fair notice of the claims alleged against him, alongside the other Law Enforcement Defendants. *Cf. Topchian,* 760 F.3d at 848. Accepting all of Plaintiffs' factual allegations as true, the petition raises a reasonable expectation that discovery will reveal a more fulsome picture of the specific roles Defendants played in the alleged violations and the evidence necessary to satisfy the elements of Plaintiffs' claims. *Cf. Twombly*, 550 U.S. at 556.

Therefore, the Court concludes Doak's motion to dismiss based upon insufficient pleading in Counts II, III, IV, and VIII fails. The Court next considers whether other grounds supporting the motion to dismiss are meritorious.

### 2.    Counts I–III

In Count I of their petition, Curtis, Lori, and Owen Wagler allege Lopez, McNamee, and Does 1–10 arrested them in violation of the Iowa Constitution and the Fourth and Fourteenth

Amendments to the United States Constitution. ECF No. 1-1 ¶¶ 64–68. In Count II, Curtis, Lori, and Owen Wagler allege Lopez, Doak, McNamee, and Does 1–10 conducted an improper and illegal search in violation of the Iowa Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 69–82. In Count III, Emma Wagler and A.W. allege Lopez, Doak, McNamee, and Does 1–10 conducted an improper and illegal search in violation of the Iowa Constitution and the Fourth and Fourteenth Amendments to the United States Constitution. *Id.* ¶¶ 83–98.

Plaintiffs agreed to dismiss the Iowa constitutional claims alleged against Law Enforcement Defendants in Counts I–III. ECF No. 20 at 1 ("Plaintiffs will agree to dismiss the State Constitutional Claims without prejudice . . . [s]pecifically, Counts 1-3"). Therefore, the Court grants Law Enforcement Defendants' motion to dismiss the Iowa constitutional claims alleged against them in Counts I–III.

Law Enforcement Defendants argue they are entitled to qualified immunity on the federal constitutional claims alleged in Counts I–III. ECF No. 13 at 9–11. "[D]efendants must show that they are entitled to qualified immunity on the face of the [petition]." *Bradford v. Huckabee*, 394 F.3d 1012, 1015 (8th Cir. 2005). Qualified immunity is an immunity from suit, and, as such, must be addressed at the earliest possible time. *Pearson v. Callahan*, 555. U.S. 223, 231–32 (2009). A state official sued in his personal capacity is entitled to qualified immunity for actions taken under color of law that violate federal rights unless "(1) [he] violated a federal statutory or constitutional right, and (2) the unlawfulness of [his] conduct was clearly established at the time." *District of Columbia v. Wesby,* 583 U.S. 48, 62–63 (2018) (citation omitted); 42 U.S.C. § 1983; *see Hafer v. Melo*, 502 U.S. 21, 25 (1991). Under prong two of the qualified immunity analysis, "clearly established" requires "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Wesby,* 583 U.S. at 63

(internal quotations omitted). "This demanding standard protects all but the plainly incompetent or those who knowingly violate the law." *Id.* The clearly established standard requires "precedent[,] . . . controlling authority, or a robust consensus of cases of persuasive authority." *Id.* (internal quotation marks and citation omitted). There are three ways to demonstrate clearly established law:

> (1) identify Circuit precedent with similar facts that "squarely governs the situation"; (2) point to "a robust consensus of cases of persuasive authority" but "a consensus based on the decision of a single circuit and a handful of lower courts" is not robust; or (3) "in rare instances" a general constitutional rule may apply with "'obvious clarity.'"

*Carter v. Ludwick*, 724 F. Supp. 3d 774, 798 (S.D. Iowa 2024) (citing *Hovick v. Patterson*, 37 F.4th 511, 517 (8th Cir. 2022), *aff'd,* 139 F.4th 982 (8th Cir. 2025).

### a.    Count I: Unlawful and False Arrest

Curtis, Lori, and Owen Wagler contend Lopez, McNamee, and Does 1–10 conducted unlawful and false arrests in violation of Plaintiffs' Fourth and Fourteenth Amendment rights. ECF No. 1-1 ¶ 66. To support this claim, Plaintiffs assert Lopez, McNamee, and Does 1–10 did not have probable cause for their arrest, the decision to arrest "was based on directionally motivated reasoning," and "[Lopez's] confirmation bias lead [sic] him to act prematurely without a legal basis." *Id.* ¶¶ 41, 58. Plaintiffs contend the lack of probable cause is evidenced by Plaintiffs' arrest prior to the processing and analyzing of any evidence seized during the execution of the search warrant. *Id.* ¶¶ 43–44. Lopez and McNamee contend they are protected from suit by qualified immunity. ECF No. 13-1 at 9–11.

In determining whether qualified immunity applies, the Court first determines whether Plaintiffs sufficiently allege Lopez and McNamee violated a constitutional right. The Fourth Amendment reads, in relevant part, "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no

Warrants shall issue, but upon probable cause . . . ." U.S. Const. amend. IV. A warrantless arrest does not violate the Fourth Amendment so long as it is supported by probable cause. *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017); *see also Beck v. Ohio,* 379 U.S. 89, 91 (1964). An officer has probable cause for an arrest "when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." *Schaffer v. Beringer*, 842 F.3d 585, 592 (8th Cir. 2016) (citation omitted).

Plaintiffs assert Lopez, McNamee, and Does 1–10 lacked probable cause to arrest them. ECF No. 1-1 ¶¶ 43–44. While Lopez and McNamee allege there existed sufficient probable cause to support the search warrant, Lopez and McNamee do not point to facts indicating probable cause to justify Plaintiffs' arrests. *See generally* ECF No. 1-1; ECF No. 13-1 at 9–11; ECF No. 21 at 1–3. A search warrant, and the probable cause underlying a search warrant, does not automatically generate the probable cause necessary for an arrest. *See* 2 Wayne R. LaFave, *Search & Seizure* § 3.1(b) (6th ed. 2020). The probable cause underlying a search warrant relies on the reasonable belief that evidence of a crime will be found in a place or on a person, while probable cause underlying an arrest relies on the reasonable belief that a person is committing or has committed an offense. *United States v. Horn,* 187 F.3d 781, 785 (8th Cir. 1999); *Schaffer*, 842 F.3d at 592. While probable cause for an arrest may arise during the execution of a search warrant, Defendants do not point to facts from which the Court could find probable cause for an arrest developed during the execution of the warrant in this case. *See Webster v. Westlake*, 41 F.4th 1004, 1012 (8th Cir. 2022); *see generally* ECF No. 1-1; ECF No. 13-1. Further, Plaintiffs allege the Assistant County Attorney who signed the search warrant application instructed Lopez and McNamee to report on the items seized during the execution of the search warrant so the Attorney and Defendants could "determine if criminal activity was occurring." ECF No. 1-1 ¶ 18. The Court, assessing the totality of the circumstances alleged in the petition, cannot conclude there was a substantial chance of

criminal activity by each specific Plaintiff or disruption to the execution of the search warrant by any Plaintiff such that there existed probable cause to independently justify Plaintiffs' arrests. *Cf. Galanakis*, 134 F.4th at 1003; *Webster*, 41 F.4th at 1012. Plaintiffs sufficiently allege Lopez and McNamee violated a constitutional right by effecting Plaintiffs' arrests without probable cause.

Even if an officer does not have probable cause for an arrest, "an officer is entitled to qualified immunity if there is at least 'arguable probable cause.'" *White*, 865 F.3d at 1074 (quoting *Borgman v. Kedley*, 646 F.3d 518, 522–23 (8th Cir. 2011)). "Arguable probable cause exists when 'an officer mistakenly arrests a suspect believing [the arrest] is based in probable cause if the mistake is "objectively reasonable."'" *Galanakis v. City of Newton*, 134 F.4th 998, 1003 (8th Cir. 2025) (quoting *Nieters v. Holtan*, 83 F.4th 1099, 1106 (8th Cir. 2023)) (alteration in original). Arguable probable cause requires looking at the totality of the circumstances to determine "whether a reasonable officer could reasonably but mistakenly conclude . . . that there was a substantial chance of criminal activity." *Id.* (citing *Wesby*, 583 U.S. at 56–57) (alteration in original) (quotation marks omitted). Courts are instructed to "avoid a 'divide-and-conquer' approach' to the facts and instead weigh 'all of the surrounding circumstances' in assessing whether the officers' belief that probable cause existed was reasonable." *Id.* at 1004 (citing *Wesby*, 583 U.S. at 61–62).

Based upon the facts alleged in the petition, the Court concludes every reasonable officer in Lopez and McNamee's position would know a search warrant obtained to search for evidence related to the Outdoor Tradition business—without any independent articulable basis to support a showing of criminal activity by Curtis, Lori, and Owen Wagler—does not create the probable cause necessary for any specific individual's arrest. The Outdoor Tradition search warrant is the sole basis asserted for probable cause; Lopez and McNamee do not point to other facts alleged to support a showing that probable cause for any individual's arrest arose prior to or during the

execution of the search warrant. *See* ECF No. 13-1. Therefore, Plaintiffs sufficiently allege Lopez and McNamee violated Plaintiffs' Fourth Amendment rights by effecting arrests without arguable probable cause.

Under prong two of the qualified immunity analysis—the clearly established prong—the Court evaluates whether Lopez and McNamee violated clearly established law at the time of the arrests such that every reasonable officer, in similar circumstances, would understand what they were doing was unlawful. *Cf. Wesby,* 583 U.S. at 62–63; *Pearson,* 555 U.S. at 244. The "fundamental question" on the second prong of the qualified immunity analysis is "whether the state of the law, as it existed at the time of the arrest, gave the defendants 'fair warning' that the arrest was unconstitutional." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 478 (8th Cir. 2010) (quoting *Young v. Selk,* 508 F.3d 868, 875 (8th Cir. 2007)). When evaluating whether the state of the law gave Defendants fair warning, "there need not be a case with 'materially' or 'fundamentally' similar facts in order for a reasonable person to know that his or her conduct would violate the Constitution." *Young,* 508 F.3d at 875 (quoting *Hope v. Pelzer,* 536 U.S. 730, 739 (2002)). "The Supreme Court has warned that [courts] must not 'define clearly established law at a high level of generality,' and a right's contours must be 'sufficiently clear.'" *Rokusek v. Jansen*, 899 F.3d 544, 547–48 (8th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741–42 (2011)).

"It is well established that a warrantless arrest without probable cause violates an individual's constitutional rights under the Fourth and Fourteenth Amendments." *Walker v. City of Pine Bluff*, 414 F.3d 989, 992 (8th Cir. 2005) (citation omitted). The Court analyzes whether it was clearly established at the time of the arrests that an arrest effected without any articulable basis for the arrest constitutes a violation of the Fourth Amendment. *See id.* Lopez and McNamee contend they are immune from suit because they effected the arrests after a seven-month-long

investigation and execution of a search warrant. ECF No. 21 at 2; *see* ECF No. 13-1 at 11. However, Lopez and McNamee do not point to facts indicating probable cause or arguable probable cause existed to justify Plaintiffs' arrests. Lopez and McNamee arrived to Plaintiffs' home to execute a search warrant, and there is no indication on the face of the petition of any articulable basis for Plaintiffs' subsequent arrests. No facts indicate Lopez and McNamee faced disruption of the execution of the warrant, criminal activity, or any other grounds for arrest. *See generally* ECF No. 1l; ECF No. 13-1. It is clearly established that Lopez and McNamee's conduct is prohibited "in the particular circumstances that [they] faced," *Wesby*, 583 U.S. at 64–65; *see, e.g., Dunn v. Does 1-22,* 116 F.4th 737, 746 (8th Cir. 2024) (affirming denial of qualified immunity for officers who effected an arrest and "do not point to any facts and circumstances within their . . . knowledge suggesting that the individual plaintiffs participated in [criminal activity]") (internal quotation marks and citation omitted); *Bell v. Neukirch,* 979 F.3d 594, 609 (8th Cir. 2020) (holding it was clearly established that officers lacked probable cause for an arrest when there was no indication that inculpatory evidence was available to them at the time of the arrest); *Walker,* 414 F.3d at 992–93 (affirming denial of qualified immunity for an arrest executed on an onlooker to a traffic stop who watched the encounter from across the street and against whom officers could not point to facts supporting a charge of obstruction or any other crime). There is a clear body of law which "place[s] the lawfulness of the particular arrest beyond debate." *Wesby*, 583 U.S. at 64. Every reasonable officer in Lopez and McNamee's position would have known arresting Plaintiffs without articulable facts supporting disruption to the search, criminal activity, or any other arguable probable cause violated Plaintiffs' clearly established rights under the Fourth Amendment.

Lopez and McNamee fail to show they are entitled to qualified immunity. *Cf. Bradford*, 394 F.3d at 1015. Therefore, the Court denies Lopez and McNamee's motion to dismiss Count I.

b.    Count II: Improper and Illegal Search

In Count II, Curtis, Lori, and Owen Wagler allege Lopez, Doak, McNamee, and Does 1–10 engaged in an improper and illegal search due to failures in the search warrant in violation of their Fourth and Fourteenth Amendment rights. ECF No. 1-1 ¶¶ 69–82. Plaintiffs argue the search warrant lacked particularity and probable cause. *Id.* ¶¶ 76, 79–80, 92, 96–97. Lopez, Doak, and McNamee argue they are entitled to qualified immunity. ECF No. 13-1 at 9–11.

The Court first analyzes Plaintiffs' particularity claim. Plaintiffs generally allege the search warrant lacked particularity because "the items to be seized were too broad" and "the warrant failed to specify which electronic devices were subject to seizure," which allowed for seizure of A.W.'s laptop and Emma Wagler's and A.W.'s money. ECF No. 1-1 ¶ 75–76, 90–92.

The Fourth Amendment states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. The Fourth Amendment's particularity requirement requires a warrant to be "sufficiently definite to enable the searching officers to identify the property authorized to be seized." *Horn,* 187 F.3d at 788. To decide whether a warrant satisfies the Fourth Amendment's particularity requirement, the Court considers "the purpose for which the warrant was issued, the nature of the items to which it is directed, and the total circumstances surrounding the case." *United States v. Fiorito*, 640 F.3d 338, 346 (8th Cir. 2011) (citation omitted). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *United States v. Peters,* 92 F.3d 768, 769–70 (8th Cir. 1996) (internal quotation marks and citation omitted).

Based on the facts alleged in Plaintiffs' petition, the search warrant at issue here is sufficiently particular to pass Fourth Amendment muster. The warrant authorizes seizure of "[b]ooks, records, receipts, notes, ledgers, and other papers and electronic devices used/relating to

the business of Outdoor Traditions." Ex. A, ECF No. 13-1 at 7. In handwriting, the warrant also authorizes seizures of "lock box + safes with curancy [sic]" and "electronically stored records." *Id.* These descriptions are sufficiently definite to enable the searching officers to identify property to be seized in relation to Plaintiffs' business Outdoor Tradition, the center of the theft investigation. *Cf. Horn,* 187 F.3d at 788; *see* Ex. A, ECF No. 13-1 at 4–5. In considering the purpose for which the warrant was issued, the search warrant application attachments further narrow the items to be seized to those believed to be involved in theft and scamming operations. Ex. A, ECF No. 13-1 at 4–5. Further, officers' seizure of A.W.'s laptop and Emma Wagler's and A.W.'s money does not render the search warrant insufficiently particular. *Cf. United States v. Saunders,* 957 F.2d 1488, 1491 (8th Cir. 1992) (holding the mere fact that some items were improperly seized during the execution of a search warrant "does not mean that the warrant was not sufficiently particular"). The warrant satisfies the Fourth Amendment's particularity requirement when considering the purpose of the warrant, the nature of the items to be seized, and the circumstances surrounding the case. *Cf. Fiorito,* 640 F.3d at 346. Therefore, the facts alleged on the face of the petition do not support a finding that Lopez, Doak, and McNamee violated Plaintiffs' constitutional rights under the particularity requirement of the Fourth Amendment.

The Court next turns to Plaintiffs' probable cause argument. Plaintiffs allege the search warrant lacked probable cause, and thus violated their Fourth Amendment rights, because "the search warrant relied on a sworn affidavit that had at least one false statement made by Lopez" and the search warrant "omitted material facts." ECF No. 1-1 ¶¶ 70, 74, 84, 88. Specifically, Plaintiffs allege Lopez included in the search warrant affidavit a statement he knew to be false: "Plaintiffs took $6,737 in exchange for wood product and that Plaintiffs did not deliver the wood and discontinued communication with the customer." *Id.* ¶¶ 71–72, 85–86. Plaintiffs also allege the warrant omitted material facts about pending small claims cases. *Id.* ¶¶ 74, 88.

For a search warrant to be constitutionally valid, the warrant must be supported by probable cause. *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). In alleging a false statement on the search warrant violated their constitutional rights, Plaintiffs must show the "affiant knowingly and intentionally, or with reckless disregard for the truth, included a false statement" and this false statement was essential to establishing probable cause. *United States v. Stevens*, 530 F.3d 714, 718 (8th Cir. 2008) (citing *Franks v. Delaware*, 438 U.S. 154, 155–56 (1978)). In alleging an omission of information in the search warrant violated their constitutional rights, Plaintiffs must show "first that facts were omitted with the intent to make, or in reckless disregard of whether they make, the affidavit misleading, and, second, that the affidavit, if supplemented by the omitted information, could not support a finding of probable cause." *United States v. Allen*, 297 F.3d 790, 795 (8th Cir. 2002). A search warrant containing a false statement and/or material omissions may still be constitutionally valid if the warrant establishes probable cause without the errors. Further, for purposes of qualified immunity, "[t]he issue is not whether the affidavit actually establishes probable cause, but rather whether the officer had an objectively reasonable belief that it established probable cause." *Mueller v. Tinkham*, 162 F.3d 999, 1003 (8th Cir. 1998) (alteration in original) (citation omitted). Probable cause exists if there are facts "sufficient to create a fair probability that evidence of a crime will be found in the place to be searched." *United States v. Wells*, 223 F.3d 835, 838 (8th Cir. 2000) (citation omitted).

Despite the alleged mistakes in the search warrant, Plaintiffs do not point to facts from which the Court could find the search warrant lacked probable cause. Excising the alleged false statement related to Plaintiffs' receipt of payment for the wood product and lack of delivery of the product, the search warrant affidavit would still contain seven statements of similar facts not alleged to be false. ECF No. 1-1 ¶¶ 71–72, 85–86; *see* ECF No. 13-1 at 3–4. These seven separate statements, alongside the other information contained in the warrant, are sufficient to establish a

"fair probability" of a theft crime and the possibility that evidence of a crime could be found at Plaintiffs' home and business. *Cf. Wells,* 223 F.3d at 838; *see* ECF No. 13-1 at 3–5, 9. Similarly, the inclusion of omitted material facts about pending small claims cases would not obviate probable cause. *Allen,* 297 F.3d at 795; *see* ECF No. 1-1 ¶¶ 74, 88. The pendency of small claims cases does not preclude an officer's objectively reasonable belief that evidence of criminal activity could be found at Plaintiffs' home and business. *Cf. id.*; *Mueller*, 162 F.3d at 1003. Plaintiffs have not alleged sufficient facts to support a claim that Lopez, Doak, and McNamee violated Plaintiffs' constitutional rights under the probable cause requirement of the Fourth Amendment.

Lopez, Doak, and McNamee are entitled to qualified immunity based on the facts alleged on the face of the petition. The Court grants Lopez, Doak, and McNamee's motion to dismiss Count II.

c. Count III: Improper and Illegal Search

In Count III, Emma Wagler and A.W. allege Lopez, Doak, McNamee, and Does 1–10 engaged in an improper and illegal search in violation of their Fourth and Fourteenth Amendment rights. ECF No. 1-1 ¶¶ 83–98. Plaintiffs assert "Lopez and others seized items from Emma and A.W. who were not the subjects of the search warrant," the search included "seizing money the young girls earned selling puppies," and "Officers searched Emma [Wagler's] and A.W.'s bookbags and seized A.W.'s laptop." ECF No. 1-1 ¶¶ 23, 90–92. Law Enforcement Defendants do not contest that Emma Wagler, A.W., and their possessions were not the subjects of the search warrant. Instead, Lopez, Doak, and McNamee argue they are protected from suit by qualified immunity. ECF No. 13-1 at 9–11.

In determining whether qualified immunity applies, the Court first determines whether Plaintiffs sufficiently allege Lopez, Doak, and McNamee violated Emma Wagler's and A.W.'s constitutional rights. "When the Government obtains information by physically intruding on

21

persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred." *Florida v. Jardines,* 569 U.S. 1, 5 (2013) (internal quotation marks and citation omitted). The Fourth Amendment requires officers obtain a warrant that is sufficiently particular and supported by probable cause before a search may be conducted on a person or their possessions. *Payton v. New York*, 445 U.S. 573, 584 (1980); *see Kentucky v. King*, 563 U.S. 452, 459 (2011). The warrant requirement is subject to "a few narrow exceptions" that do not apply under the facts alleged by Plaintiffs. *United States v. Dunn,* 928 F.3d 688, 692 (8th Cir. 2019); *see, e.g., Fernandez v. California,* 571 U.S. 292 (2014) (consent); *Brigham City, Utah v. Stuart*, 547 U.S. 398 (2006) (emergency aid); *Minnesota v. Olson,* 495 U.S. 91 (1990) (preventing imminent destruction of evidence); *Horton v. California*, 496 U.S. 128 (1990) (plain view); *United States v. Santana,* 427 U.S. 38 (1976) (hot pursuit); *Mincey v. Arizona*, 437 U.S. 385 (1978) (exigent circumstances).

Lopez, Doak, and McNamee conducted a search of Emma Wagler and A.W. without obtaining a warrant as to them or their possessions. *See* ECF No. 1-1 ¶¶ 22–24, 37, 89–90, 92. The search of Emma Wagler, A.W., and their possessions may be considered warrantless when "the warrant did not describe the items to be seized *at all.*" *Groh v. Ramirez*, 540 U.S. 551, 558 (2004) (emphasis in original). Plaintiffs allege Lopez, Doak, and McNamee searched Emma Wagler's and A.W.'s bookbags and seized Emma Wagler's and A.W.'s money and a laptop. ECF No. ¶¶ 23, 90, 92. Emma Wagler and A.W. were not the subjects of the search warrant; the search warrant does not list Emma Wagler or A.W. as persons to be searched nor are their belongings suggested to be items that are "used/relating to the business of Outdoor Traditions." *Id.* ¶ 89; *see* Ex. A, ECF No. 13-1 at 1–9. Because a search warrant was required to search Emma Wagler and A.W., and a search warrant was not obtained concerning Emma Wagler, A.W., or their possessions, Plaintiffs sufficiently allege Lopez, Doak, and McNamee conducted a warrantless search of Emma Wagler

and A.W. in violation of their Fourth Amendment rights.

The Court turns to the second step of the qualified immunity analysis: whether Emma Wagler's and A.W.'s right to be free from a warrantless search under the facts alleged was clearly established at the time of the search such that every reasonable official, in similar circumstances, would understand what they were doing was unlawful. The appropriate inquiry is whether a reasonable officer could have believed it was reasonable to execute this particular warrant—which made no mention of Emma Wagler, A.W., or their possessions—on Emma Wagler's and A.W.'s person and possessions. *Cf. Hummel-Jones v. Strope*, 25 F.3d 647, 653 (8th Cir. 1994); *see* Ex. A, ECF No. 13-1 at 1–9. There exists a clear line of precedent holding a search warrant does not authorize the search of people, places, or possessions which are not included in the warrant and which do not, independently, give rise to probable cause for a search. *See, e.g., Ybarra v. Illinois*, 444 U.S. 85 (1979); *see* 2 Wayne R. LaFave, *Search & Seizure* § 4.9(c) (6th ed. 2020) (collecting cases).

*Ybarra* and its progeny clearly establish "a person's mere propinquity to others independently suspected of criminal activity does not, without more, give rise to probable cause to search that person" or their possessions. 444 U.S. at 91. In *Ybarra,* a judge approved a warrant authorizing the search of "[t]he Aurora Tap Taven," "the person of 'Greg,' the bartender," and "evidence of the offense of possession of a controlled substance." *Id.* at 88. Officers executed the warrant, but searched the persons and possessions located in the tavern who were not named nor detailed in the search warrant. *Id.* at 88–90. The Supreme Court held "a search or seizure of a person must be supported by probable cause particularized with respect to that person. This requirement cannot be undercut or avoided by simply pointing to the fact that coincidentally there exists probable cause to search or seize another or to search the premises where the person may happen to be." *Id.* at 91; *see also Hummel-Jones,* 25 F.3d at 652.

Here, the search warrant authorized the search of Curtis, Lori, and Owen Wagler; their electronic devices; their residence; and items related to the Outdoor Tradition business. Ex. A, ECF No. 13-1 at 1–9. Lopez, Doak, and McNamee searched Emma Wagler's and A.W.'s persons and possessions located on the premises despite the fact they were neither named nor even tangentially described in the warrant. Lopez, Doak, and McNamee point to no facts to support particularized probable cause for the search of Emma Wagler and A.W. at the time of the issuance of the warrant nor at the time of the execution of the warrant. *Cf. Ybarra,* 444 U.S. at 90. It is clearly established such that every reasonable officer facing similar circumstances would know the search of Emma Wagler's and A.W.'s persons and possessions, including their bookbags, money, and laptop, violates the Fourth Amendment when they were not the subjects of the search warrant, their possessions were not suggested to be items utilized in the Outdoor Tradition business, and their search was not supported by any articulable basis for probable cause or arguable probable cause.

Lopez, Doak, and McNamee fail to show they are entitled to qualified immunity on the face of the petition as to Count III. *Cf. Bradford,* 394 F.3d at 1015. Therefore, the Court denies Lopez, Doak, and McNamee's motion to dismiss Count III.

### 3.    Count IV: Malicious Prosecution

In Count IV of their petition, Curtis, Lori, and Owen Wagler allege a claim of malicious prosecution against Lopez, Doak, McNamee, and Does 1–10. ECF No. 1-1 ¶¶ 99–108.

To prove a claim for malicious prosecution, a plaintiff must show "(1) a previous prosecution, (2) instigation of that prosecution by the defendant, (3) termination of that prosecution by acquittal or discharge of the plaintiff, (4) want of probable cause, (5) malice on the part of [the] defendant for bringing the prosecution, and (6) damage to [the] plaintiff." *Venckus v. City of Iowa City*, 990 N.W.2d 800, 808 (Iowa 2023), *as amended* (July 20, 2023) (alterations in original)

(quoting *Linn v. Montgomery*, 903 N.W.2d 337, 345 (Iowa 2017)). When the defendant is a public official, as here, the plaintiff must allege actual malice under element five. *Carter v. Ludwick*, 724 F. Supp. 3d 774, 815 (S.D. Iowa 2024), *aff'd*, 139 F.4th 982 (8th Cir. 2025) (citing *Moser v. Black Hawk Cnty.*, 300 N.W.2d 150, 152 (Iowa 1981). Actual malice requires the plaintiff to show instigation of criminal proceedings was "inspired by ill-will, hatred, or other wrongful motives." *Vander Linden v. Crews*, 231 N.W.2d 904, 906 (Iowa 1975).

Lopez, Doak, and McNamee argue Plaintiffs merely plead facts consistent with Defendants' liability, and, thus, do not adequately state a claim for malicious prosecution. ECF No. 13-1 at 12–13. Lopez, Doak, and McNamee assert Plaintiffs "list each of the elements required to make out a [malicious prosecution] claim" and then "plead only one additional statement[:] that the Law Enforcement Defendants allegedly made false statements in obtaining the search warrant" to support the malicious prosecution charge. *Id.* at 13.

Lopez, Doak, and McNamee fail to address Plaintiffs' incorporation by reference of additional facts as outlined in other sections of the petition. *See* ECF No. 1-1 ¶ 99 ("Plaintiffs restate and incorporate by reference the allegations in each of the above paragraphs as if fully set forth herein."). In other areas of the petition, taking all facts in the light most favorable to Plaintiffs, Plaintiffs allege Curtis, Lori, and Owen Wagler were arrested pursuant to "ten criminal charges (1 B Felony, 5 C Felonies, 4 D Felonies)" and prosecuted at least as to the Ongoing Criminal Conduct charges, *id.* ¶ 49; Defendants instigated the investigation and dictated the subsequent prosecution of Plaintiffs, *id.* ¶¶ 11, 18, 25, 49; the prosecution was dismissed by the County Attorney due to "lack of evidence and false statements in Lopez's affidavits," *id.* ¶¶ 40, 48–49, "[t]he lack of probable cause and evidence was so lacking that it led to the charges being dismissed," *id.* ¶ 60; Defendants instigated the prosecution "in an attempt to shut down [Plaintiffs'] business," *id.* ¶ 9; and Plaintiffs suffered "paranoia, depression, anger, embarrassment, emotional distress,

humiliation, mental pain, mental anguish," and their "business suffered economic damages" as a result of the prosecution, *id.* ¶¶ 107–08. Through the facts alleged in both the malicious prosecution section of their petition and elsewhere in the petition, Plaintiffs adequately state a claim for malicious prosecution at this stage of the litigation.

Lopez, Doak, and McNamee also argue Plaintiffs specifically fail to allege facts sufficient to meet the heightened standard of actual malice as required by element five of a malicious prosecution claim. ECF No. 13-1 at 12–13. Actual malice requires Plaintiffs to show Defendants instigated the criminal proceedings due to "ill-will, hatred, or other wrongful motives." *Vander Linden*, 231 N.W.2d at 906. Throughout their petition, Plaintiffs allege Defendants initiated the investigation and prosecution "in an attempt to shut down their business and convict them of unsubstantiated crimes," arrested them and planned to detain them "to intentionally traumatize, inconvenience, embarrass, and burden them," and "commenced a smear campaign against [Plaintiffs] and contacted the Plaintiffs' customers claiming they were being scammed and defrauded." ECF No. 1-1 ¶ 9, 29, 38. Plaintiffs adequately plead actual malice at this stage of the litigation.

The Court denies Lopez, Doak, and McNamee's motion to dismiss Count IV.

### 4.    Count V: Defamation

In Count V of their petition, Curtis, Lori, and Owen Wagler allege a claim of defamation against Lopez, McNamee, and Does 1–10. ECF No. 1-1 ¶¶ 109–22. They support this claim by asserting Lopez, McNamee, and Does 1–10, orally and in writing, falsely accused Plaintiffs of "past crimes, continuous crimes, and fraud" outside the scope of their authority. *Id.* ¶¶ 112–14. After the search conducted at Plaintiffs' home and business, Lopez, McNamee, and Does 1–10 published a press release stating Curtis, Lori, and Owen Wagler were arrested on ten felony charges each. *Id.* ¶ 45. Information gathered pursuant to the execution of the search warrant was

published to news outlets and appeared on local television. *Id.* ¶ 118. Plaintiffs allege Defendants engaged in a "smear campaign" against them and "contacted the Plaintiffs' customers claiming they were being scammed and defrauded." *Id.* ¶ 38. Lopez, McNamee, and Does 1–10 later published a second press release, *id.* ¶ 120, and accused Plaintiffs of participating in a criminal enterprise at public meetings, *id.* ¶ 39. Plaintiffs allege Lopez, McNamee, and Does 1–10, through their statements, intended to render Plaintiffs "repulsive, [and] subject them to public hatred, contempt and ridicule." *Id.* ¶ 116.

To prevail on a defamation claim, Plaintiffs must show "(1) publication, (2) of a defamatory statement, (3) which was false and (4) malicious, (5) made of and concerning the plaintiff, (6) which caused injury." *Bierman v. Weier*, 826 N.W.2d 436, 443–44 (Iowa 2013). However, a claim for defamation per se does not require proof of malice, falsity, or damage. *Lara v. Thomas*, 512 N.W.2d 777, 786 (Iowa 1994). Statements are "defamatory per se if they are of a nature that a court can presume as a matter of law that their publication will have a defamatory effect." *Huegerich v. IBP, Inc.*, 547 N.W.2d 216, 221 (Iowa 1996). Defamation per se includes "accusing a person of being a liar, a cheater, or thief" and "accus[ing] a person of an indictable crime" is defamation per se. *Id.*; *Spencer v. Spencer,* 479 N.W.2d 293, 296 (Iowa 1991). In considering a defamation claim, the Court must "decide whether the challenged statement is capable of bearing a particular meaning, and whether that meaning is defamatory." *Yates v. Iowa W. Racing Ass'n*, 721 N.W.2d 762, 771–72 (Iowa 2006) (internal quotation marks and citation omitted). In doing so, the Court must examine the "totality of the circumstances in which [the] statements are made." *Id.* at 769.

Plaintiffs sufficiently allege a claim of defamation per se. Lopez and McNamee, in the statements at issue, specifically accused Plaintiffs of fraud and claimed they had been charged with nine felony thefts. ECF No. 1-1 ¶ 114, 120; *cf. Spencer,* 479 N.W.2d at 296. Plaintiffs assert Lopez

and McNamee published two press releases disclosing information about Plaintiffs' arrests and falsely accusing Plaintiffs of being charged with ten felonies. *Id.* ¶ 45, 120. Plaintiffs also assert information related to the execution of the search warrant on their home and business was published to news outlets and appeared on local television. *Id.* ¶ 118. The statements concern purportedly false criminal charges, continuous criminal activity, and fraud. *Id.* ¶ 114, 120. The statements specifically accuse Curtis, Lori, and Owen Wagler of engaging in criminal activity. *Id.* ¶ 112. Accepting all facts as true, Plaintiffs sufficiently make out a claim of defamation against Lopez and McNamee.

Lopez and McNamee argue Plaintiffs' defamation claim is defeated by qualified privilege. ECF No. 21 at 4. "A qualified privilege exists with respect to statements that are otherwise defamatory if the following elements exist: (1) the statement was made in good faith; (2) the defendant had an interest to uphold; (3) the scope of the statement was limited to the identified interest; and (4) the statement was published on a proper occasion, in a proper manner, and to proper parties only." *Barreca v. Nickolas*, 683 N.W.2d 111, 118 (Iowa 2004) (internal quotation omitted); *see Garcia v. Primary Health Care, Inc.*, 604 F. Supp. 3d 765, 779 (S.D. Iowa 2022). Qualified privilege is an affirmative defense to a defamation claim. *Jones v. Univ. of Iowa,* 836 N.W.2d 127, 149 (Iowa 2013). Plaintiffs are not required to plead facts in the petition to rebut an affirmative defense. 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1276 (4th ed. 2013 Supp. 2025); Fed. R. Civ. P. 8(c). Further, a qualified privilege defense "is a defeasible immunity from liability; that is, a qualified privilege may be defeated under certain circumstances." *Barreca,* 683 N.W.2d at 118. The Court declines to evaluate Lopez and McNamee's affirmative defense of qualified privilege at the motion to dismiss stage.

Therefore, the Court denies Lopez and McNamee's motion to dismiss Count V.

###### 5.    Count VI: Battery

In Count VI, Curtis, Lori, and Owen Wagler assert a battery claim against Lopez, White, and Does 1–10. ECF No. 1-1 ¶¶ 123–29.[6] Curtis Wagler asserts he suffered an offensive touching through his unlawful arrest and two cavity searches. *Id.* Owen Wagler asserts he suffered an offensive touching through his unlawful arrest, including by being handcuffed. *Id.* 21, 123–29.

To plead a claim for battery, Plaintiffs must show 1) Lopez and White acted intending to cause a harmful or offensive contact with Plaintiffs or imminent apprehension of such a contact and 2) a harmful or offensive contact occurred. *See Nelson v. Winnebago Indus., Inc.,* 619 N.W.2d 385, 388–89 (Iowa 2000).

Lopez and White argue Plaintiffs merely plead facts consistent with Defendants' liability, which is insufficient to meet the heightened pleading standard of Iowa Code § 670.4A. ECF No. 13-1 at 13–14. Plaintiffs are not required to meet this heightened pleading standard for state common law tort claims. *See Doe,* 20 N.W.3d at 806; ECF No. 21 at 3. Lopez and White also argue, while Plaintiffs allege Curtis Wagler was subjected to cavity searches and Owen Wagler was handcuffed, the petition lacks facts related to Lopez's involvement in these contacts. ECF No. 13-1 at 14. In the petition, Plaintiffs allege "Lopez and Does 1-10 arrested Curtis, Lori, and Owen [Wagler] against their will" and "the [arrest] was done with the intent to assert power and offensive contact." ECF No. 1-1 ¶¶ 124–25. Plaintiffs also assert "Owen Wagler was handcuffed and placed in a police vehicle" after "Lopez failed to heed ASA Vierra's instruction and arrested Curtis, Lori, and Owen [Wagler]." *Id.* ¶¶ 19, 21. Through the facts alleged in both the battery section of their petition and elsewhere in the petition, Plaintiffs adequately state a claim for battery at this stage of the litigation. *Cf. Topchian,* 760 F.3d at 848; *Iqbal,* 556 U.S. at 678.

---

[6] Lori Wagler agrees to dismiss her claim for battery. ECF No. 20 at 1.

The Court denies Lopez and White's motion to dismiss Count VI. Lori Wagler's battery claim is dismissed by agreement of the parties. *See* ECF No. 20 at 1.

### 6.    Count VII: Assault

In Count VII, Curtis, Lori, and Owen Wagler allege assault against Lopez, White, and Does 1–10. ECF No. 1-1 ¶¶ 130–37. Specifically, Curtis, Lori, and Owen Wagler allege their wrongful arrest was an offensive touching and Lopez, White, and the Doe Defendants' conduct during the execution of the search warrant and arrests placed them in fear of immediate offensive touching. *Id.* ¶¶ 131–33.[7]

To sufficiently plead assault, Plaintiffs must show 1) Lopez and White acted intending to cause a harmful or offensive contact with Plaintiffs or imminent apprehension of such a contact and 2) Plaintiffs were put in imminent apprehension. *See Tinius v. Carroll Cnty. Sheriff Dep't*, 321 F. Supp. 2d 1064, 1080 (N.D. Iowa 2004); *see also Greenland v. Fairtron Corp.,* 500 N.W.2d 36, 38 (Iowa 1993).

Lopez and White's arguments as to Plaintiffs' insufficient assault claim are similar to the arguments related to Plaintiffs' battery claim. *See* ECF No. 13-1 at 13–14. Plaintiffs are not required to meet the heightened pleading standard set out in Iowa Code § 670.4A for their state common law assault claim, as Lopez and White argue in their motion to dismiss. *See Doe,* 20 N.W.3d at 806; ECF No. 21 at 3. To the extent Lopez and White assert Plaintiffs merely plead facts consistent with their liability for assault, the Court notes Plaintiffs' specific allegations that Lopez and "approximately seven other armed members of law enforcement" executed the search warrant at Plaintiffs' home and business and subsequently arrested Plaintiffs. ECF No. 1-1 ¶¶ 11,

---

[7] Plaintiffs include additional facts related to their assault claim in their Resistance. *See* ECF No. 20 at 11–13. The Court analyzes only the facts alleged and incorporated in Plaintiffs' petition for the purpose of deciding Law Enforcement Defendants' motion to dismiss. *Cf. Paddock Labs.,* 855 F.3d at 954; *Gibb,* 958 F.2d at 816.

19–21. Plaintiffs allege, during the execution of the search warrant and arrest, "Lopez, Zach White, and Does 1-10's conduct placed Plaintiffs in fear of an immediate offensive touching," "Plaintiffs reasonably believed that Lopez, Zach White, and Does 1-10's would carry out an offensive touching," "Lopez, Zach White, and Does 1-10 wrongfully arrested Plaintiffs," and "the wrongful arrest was a wrongful touching." *Id.* ¶¶ 131–33, 136.

The Court denies Lopez and White's motion to dismiss Count VII.

### 7.    Count VIII: Intentional Infliction of Emotional Distress

In Count VIII, Curtis, Lori, Owen, and Emma Wagler and A.W. assert all Law Enforcement Defendants caused an intentional infliction of emotional distress. ECF No. 1-1 ¶¶ 138–43. Plaintiffs allege Law Enforcement Defendants' "illegal seizure, illegal searches, defamation, [and] cavity searches are outrageous conduct that go beyond the bounds of decency." *Id.* ¶ 139. Plaintiffs suffered "emotional distress, embarrassment, fear, horror, grief, shame, humiliation, anger, chagrin, disappointment and worry" due to Law Enforcement Defendants' conduct. *Id.* ¶ 143. Law Enforcement Defendants argue Plaintiffs fail to allege sufficiently extreme and outrageous conduct to support a claim of intentional infliction of emotional distress. ECF No. 21 at 5–6.

To survive a motion to dismiss an intentional infliction of emotional distress claim, Plaintiffs must plead sufficient facts to show "(1) the defendants engaged in extreme and outrageous conduct; (2) the defendants intentionally caused, or recklessly disregarded the likelihood of causing, severe or extreme emotional distress to the plaintiff; (3) the plaintiff in fact suffered severe or extreme emotional distress; and (4) the defendants' extreme and outrageous conduct was the actual and proximate cause of the severe or extreme emotional distress." *White v. Harkrider*, 990 N.W.2d 647, 652 (Iowa 2023). For conduct to be extreme and outrageous, the conduct must be "so extreme in degree, as to go beyond all possible bounds of decency, and to be

regarded as atrocious, and utterly intolerable in a civilized community." *Fuller v. Loc. Union No. 106 of United Bhd. of Carpenters & Joiners of Am.*, 567 N.W.2d 419, 423 (Iowa 1997) (internal quotation marks and citation omitted). Whether conduct is sufficiently outrageous to support Plaintiffs' recovery is a legal question that the Court may resolve at the motion to dismiss stage. *See White,* 990 N.W.2d at 653 (Iowa 2023) (collecting cases); *see also Hedlund v. State,* 930 N.W.2d 707, 724 (Iowa 2019), *as amended* (Sept. 10, 2019).

Plaintiffs fail to allege sufficiently extreme and outrageous conduct to support a claim of intentional infliction of emotional distress, except as to White's cavity searches of Curtis Wagler. *See* ECF No. 1-1 ¶ 26. Plaintiffs do not point to sufficient facts to indicate the search warrant to search Plaintiffs' home and business lacked particularity or probable cause. *See* discussion *supra* Section IV.B.2.b. Thus, Plaintiffs do not sufficiently allege an "illegal search" occurred which can support Curtis, Lori, and Owen Wagler's claim for intentional infliction of emotional distress. ECF No. 1-1 ¶ 139. The facts alleged pertaining to the search of Emma Wagler and A.W.—that "Lopez and others seized items from Emma and A.W. who were not the subjects of the search warrant," the search included "seizing money the young girls earned selling puppies," and "Officers searched Emma [Wagler's] and A.W.'s bookbags and seized A.W.'s laptop"—do not amount to extreme and outrageous conduct. *Id.* ¶¶ 23, 90–92; *cf. Fuller*, 567 N.W.2d at 423.

Similarly, the facts alleged regarding Curtis, Lori, and Owen Wagler's arrest and the defamation against Plaintiffs do not rise to the level of extreme and outrageous conduct. Curtis, Lori, and Owen Wagler allege, during the arrests, they "were placed in police vehicles," "unable to leave," and "were told they were going to be held [over the weekend]" before receiving a detention hearing. ECF No. 1-1 ¶¶ 25, 28. Owen Wagler was handcuffed. *Id.* ¶ 21. After the arrests, Plaintiffs allege Law Enforcement Defendants engaged in a "smear campaign" against them and "contacted the Plaintiffs' customers claiming they were being scammed and defrauded." *Id.* ¶ 38.

Law Enforcement Defendants published at least one press release falsely stating Plaintiffs were arrested on ten felony charges each and accused Plaintiffs of participating in a criminal enterprise at public meetings. *Id.* ¶¶ 39, 45, 120. These facts, without more, do not "go beyond all possible bounds of decency, [] to be regarded as atrocious, and utterly intolerable in a civilized community." *Cf.* Fuller, 567 N.W.2d at 423; *see, e.g., White,* 990 N.W.2d at 653 (finding a warrantless arrest lacked the extreme and outrageous nature necessary to support an intentional infliction of emotional distress claim); *Taggart v. Drake Univ.,* 549 N.W.2d 796, 802 (Iowa 1996) (finding statements, even if defamatory, could not support an intentional infliction of emotional distress claim). Other than as to White's conduct towards Curtis Wagler, Plaintiffs' asserted facts as to an illegal search, illegal seizure, and defamation, are not "extremely egregious." *Taggart,* 549 N.W.2d at 802.

However, Curtis Wagler's claim of intentional infliction of emotional distress as to the two cavity searches conducted by White rises to the level of extreme and outrageous conduct. Defendants point to no facts on the face of the petition to support the arrest of Curtis, Lori, and Owen Wagler such that a cavity search would be reasonable, and point to no facts to support Curtis Wagler's related cavity searches. *See generally* ECF No. 1-1; ECF No. 13-1; ECF No. 21. Cavity searches represent a "serious intrusion on one's privacy." *Bell v. Wolfish*, 441 U.S. 520, 563 (1979) (Powell, J., concurring in part and dissenting in part). They are "intrusive, degrading, humiliating, embarrassing, and greatly increase[] a[] [person]'s feelings of vulnerability." *Goff v. Nix*, 626 F. Supp. 736, 739 (S.D. Iowa 1984), *rev'd on other grounds*, 803 F.2d 358 (8th Cir. 1986). A cavity search that includes the anus, when there are no facts on the face of the petition to support the reason for the search, rises to the level of extreme and outrageous conduct.

The Court denies Law Enforcement Defendants' motion to dismiss Curtis Wagler's claim of intentional infliction of emotional distress against White. The Court grants all other Law

Enforcement Defendants' motion to dismiss all other Plaintiffs' Count VIII claims.

### 8.    Count IX: Open Records Act

In Count IX, Curtis, Lori, and Owen Wagler allege McNamee and Does 1–10 violated Iowa's Open Records Act by refusing to disclose the documents and communication related to Lopez's placement on Henry County's Brady-Giglio list and the records relating to the County Attorney's decision to dismiss Plaintiffs' criminal case. ECF No. 1-1 ¶¶ 144–61.[8] Plaintiffs allege McNamee decided to personally handle Plaintiffs' open records request and provided seven pages of records to Plaintiffs. *Id.* 147, 153. McNamee claims the remaining records are confidential. *Id.* ¶ 156.

To sustain a cause of action under the Open Records Act, Iowa Code Chapter 22, Plaintiffs must show "(1) the defendant is subject to the requirements of chapter 22, (2) the records in question are government records, and (3) the defendant refused to make those government records available for examination and copying by the plaintiff[s]." *Diercks v. Scott Cnty.*, 17 N.W.3d 364, 369–70 (Iowa 2025), *as amended* (Apr. 23, 2025) (citing Iowa Code § 22.10(2) and *Teig v. Chavez*, 8 N.W.3d 484, 490 (Iowa 2024) (internal quotation marks omitted). If Plaintiffs make out this prima facie case under the Open Records Act, § 22.10(2) shifts the burden to Defendants to demonstrate compliance with the requirements of the Act. *Id.*; Iowa Code § 22.10(2). "There is a presumption in favor of disclosure and a liberal policy in favor of access to public records." *Mitchell v. City of Cedar Rapids*, 926 N.W.2d 222, 229 (Iowa 2019) (citation omitted).

McNamee argues Plaintiffs have failed to state a claim under the Open Records Act because Plaintiffs have not established McNamee was the custodian of the requested records. ECF No. 13-1 at 14–16. The Act allows judicial enforcement of open records requests "against the

---

[8] Plaintiffs agreed to dismiss their Iowa constitutional claim in Count IX. ECF No. 20 at 4.

lawful custodian and any other persons who would be appropriate defendants under the circumstances." Iowa Code § 22.10(1). Iowa Code § 22.1(2) defines the custodian of a record as "the government body currently in physical possession of the public record." Plaintiffs allege, and Defendants acknowledge, McNamee retained physical custody of requested documents and provided a subset of those documents to Plaintiffs. ECF No. 1-1 ¶¶ 147–53 ("McNamee decided to personally handle the [open records] request." "Sheriff [McNamee] provided 1,000 pages of documents to the County Attorney to review for confidentiality." "McNamee's office emailed the records it had physically mailed, which consisted of seven pages of records, with confidentiality asserted to withhold the remainder."); ECF No. 13-1 at 15 ("While Sheriff McNamee may have had lawful possession of some related records—as Sheriff McNamee did ultimately disclose some records to the Waglers . . . ."). McNamee may not avoid compliance with Iowa's Open Records Law by arguing Plaintiffs did not identify the correct custodian of records when the Henry County Sheriff's Office is required by law to publicly disclose their custodian of records. *See* Iowa Code § 22.1(2) ("Each government body shall . . . publicly announce the particular officials or employees to whom responsibility for implementing the requirements of this chapter has been delegated."). Through his actions, McNamee acted as the custodian of the requested documents. He took physical custody of the requested documents and exercised control over their release to Plaintiffs. ECF No. 1-1 ¶¶ 147–53; ECF No. 13-1 at 15. At this stage of the litigation, Plaintiffs have sufficiently alleged McNamee is an appropriate defendant subject to the requirements of Iowa's Open Records Act.

McNamee also argues Plaintiffs fail to state a claim under Iowa's Open Records Act because the requested records are privileged. ECF No. 13-1 at 14–16. Plaintiffs allege McNamee is subject to the requirements of the Open Records Act, the requested records are government records, and McNamee refused to make those government records available for examination, as

required by Iowa Code § 22.10(2). Pursuant to the Open Records Act, the burden shifts to McNamee to demonstrate compliance with the requirements of the Open Records Act, which can include "showing the [information] is exempt from disclosure as confidential." Iowa Code § 22.10(2); *Diercks,* 17 N.W.3d at 369 (alternation in original) (citation omitted). Plaintiffs are not required to plead facts in the petition to rebut this affirmative defense. *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1276 (4th ed. 2013 Supp. 2025); Fed. R. Civ. P. 8(c). The Court declines to evaluate McNamee's affirmative defense at the motion to dismiss stage.

The Court denies McNamee's motion to dismiss Plaintiffs' Open Records Act claim alleged in Count IX.

Plaintiffs agreed to dismiss the Iowa constitutional claims alleged against McNamee in Count IX. ECF No. 20 at 4 ("Plaintiffs agree to dismiss the Iowa Constitutional Claims without prejudice."). Therefore, the Court grants McNamee's motion to dismiss the Iowa constitutional claims alleged in Count IX.

### C.      John and Jane Does 1–10

"Dismissal [of defendants] is proper only when it appears that the true identity of the defendant cannot be learned through discovery or the court's intervention." *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985). Plaintiffs allege each of Counts I–IX against Defendants John and Jane Does 1–10. Specifically, Plaintiffs assert the Doe Defendants are agents of Henry County who aided in wrongfully procuring the search warrant, wrongfully conducting the search at Plaintiffs' home and business, commencing the criminal proceedings against Plaintiffs, engaging in defamation, and violating Plaintiffs rights, ECF No. 1-1 ¶¶ 11, 100, 112–18, 124, 131–37. Plaintiffs assert the Doe Defendants are unknown "because of Defendant Henry County's continuing violation of Iowa law regarding the release of law enforcement records," but will

become known through the discovery process. *Id.* ¶ 11. Plaintiffs have sufficiently alleged claims against the Doe Defendants such that discovery will reveal the identity of the Doe Defendants.

To the extent there are insufficient grounds to support claims alleged against identified Law Enforcement Defendants, the Court finds there are insufficient grounds to support claims alleged against the unidentified Doe Defendants. Therefore, the Court dismisses the state constitutional claims in Counts I, III, and IX as alleged against the Doe Defendants and Counts II and XIII as alleged against the Doe Defendants.

### D.    Motion to Amend

Plaintiffs seek leave to amend their petition. ECF No. 19 at 2; ECF No. 20 at 2, 15. The request is denied.

Plaintiffs have improperly combined their motion to amend with their resistance to Defendants' motions to dismiss. *See* LR 7(e) ("A resistance to a motion may not include a separate motion or a cross-motion by the responding party. Any separate motion or cross-motion must be filed separately as a new motion."). Plaintiffs also fail to include a representation that counsel has conferred in good faith with counsel for the opposing parties concerning the motion. *See* LR 7(k) ("All nondispositive motions [including motions to amend] must contain a representation that counsel for the moving party personally has conferred in good faith with counsel for all other parties ... concerning the motion, and a statement of whether or not the other parties consent to the motion."). Further, Plaintiffs have not provided specific information describing the changes sought with their proposed amendment, stating only they seek to amend in order "to cure any defects noted by the Court." ECF No. 19 at 2; ECF No. 20 at 2; *see* LR 15 ("A party moving to amend or supplement a pleading pursuant to Federal Rule of Civil Procedure 15(a)(2) [ ] must describe in the motion the changes sought.").

Plaintiffs have not complied with the local rules in moving for leave to amend their petition.

Without specific information about the changes sought by the proposed amendments, the Court cannot rule on their adequacy. Accordingly, Plaintiffs' motion for leave to amend their petition is denied.

## V.    CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that Defendant Henry County's Motion to Dismiss, ECF No. 11, is **GRANTED in part** and **DENIED in part**, as set forth below.

Henry County's motion to dismiss the state constitutional claims in Counts I, III, and IX is granted.

Henry County's motion to dismiss the federal constitutional claim in Count I is denied.

Henry County's motion to dismiss Count II is granted.

Henry County's motion to dismiss the federal constitutional claim in Count III is denied.

Henry County's motion to dismiss Counts IV–VIII is granted.

The Iowa statutory claim in Count IX remains.

**IT IS FURTHER ORDERED** that Defendants Carlos Lopez, Rich McNamee, Chad Doak, and Zach White's Motion to Dismiss, ECF No. 13, is **GRANTED in part** and **DENIED in part**, as set forth below.

Law Enforcement Defendants' motion to dismiss the state constitutional claims against all Defendants in Counts I, III, and IX is granted.

Law Enforcement Defendants' motion to dismiss the federal constitutional claim in Count I is denied.

Law Enforcement Defendants' motion to dismiss Count II is granted.

Law Enforcement Defendants' motion to dismiss the federal constitutional claim in Count III is denied.

Law Enforcement Defendants' motion to dismiss Counts IV–V is denied.

Law Enforcement Defendants' motion to dismiss Curtis Wagler and Owen Wagler's claim in Count VI is denied. Law Enforcement Defendants' motion to dismiss Lori Wagler's claim in Count VI is granted.

Law Enforcement Defendants' motion to dismiss Count VII is denied.

Law Enforcement Defendants' motion to dismiss Curtis Wagler's claim against Zach White in Count VIII is denied. Law Enforcement Defendants' motion to dismiss Count VII is granted for all other Plaintiffs against all other Defendants.

Law Enforcement Defendants' motion to dismiss the federal constitutional claim in Count IX is denied.

**IT IS FURTHER ORDERED** that the claims alleged against Defendants John and Jane Does 1–10 remain only as to the federal constitutional claim in Count I; the federal constitutional claim in Count III; Counts IV–VII; and the Iowa statutory claim in Count IX.

**IT IS SO ORDERED**.

Dated this 17th day of December, 2025.

R EBECCA G OODGAME E BINGER
U NITED S TATES D ISTRICT J UDGE