**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**EASTERN DIVISION**

CURTIS WAGLER; LORI WAGLER; OWEN WAGLER, EMMA WAGLER, and A.W., a minor,

Plaintiffs,

v.

DEPUTY SHERIFF CARLOS LOPEZ; SHERIFF RICH McNAMEE, DEPUTY SHERIFF CHAD DOAK, ZACH WHITE, and HENRY COUNTY, JOHN/JANE DOES 1-10,

Defendants.

CASE NO. 3:25-cv-00019-RGE-WPK

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR LEAVE TO FILE FIRST AMENDED COMPLAINT**

COME NOW, Plaintiffs, by and though undersigned counsel, and submit this consolidated reply to the resistances of Henry County (Dkt. 48) and the Law Enforcement Defendants (Dkt. 49).

## INTRODUCTION

Plaintiffs seek leave to add a single count against Henry County, conforming the pleadings to the sworn admissions of the County's own personnel. The evidence comes from testimony that did not exist until the June and July 2026 depositions and that reached counsel only weeks before Plaintiffs moved. Defendants resist on timing they created, prejudice they cannot identify, and a merits argument dressed as futility. One point disposes of the County's expert-deadline complaint at the threshold: Plaintiffs' own expert deadline has passed as well, and Plaintiffs disclosed no expert on municipal liability by design because the failures pleaded in Count X are so obvious that no expert testimony is required to prove them. The parties stand on identical footing. Rule 15(a)(2) directs that "[t]he court should freely give leave when justice so

requires," and on this record, with good cause shown under Rule 16(b)(4), justice requires leave here.

## ARGUMENT

### I. The Deposition-Timing Argument Measures Diligence Against the Wrong Clock.

Defendants fault Plaintiffs for "waiting over a year" to depose the individual Defendants. The year they count is the period their own motions to dismiss kept this case frozen at the pleadings: no Defendant answered until December 22–30, 2025. Plaintiffs served written discovery two weeks after the last answer, received responses in late February 2026, and took eleven depositions between June 2 and July 22, 2026, all within the discovery period the Court ordered. Rule 16(b) measures "the movant's diligence in attempting to meet the [scheduling] order's requirements." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716–17 (8th Cir. 2008). Nothing in the scheduling order sequenced depositions, and no authority Defendants cite holds a party un-diligent for taking court-permitted discovery within the court-ordered window.

The 86-day arithmetic fares no better, because it asserts Plaintiffs should have moved to amend on memory rather than the record. The June 2 transcripts were not delivered until early July 2026, and the July 21–22 deposition transcripts arrived on or about August 10, 2026. Plaintiffs moved on August 27, 2026, within weeks of the completed record and two days after the County's own summary-judgment filing argued the failure-to-train-and-supervise theory on the merits. That is the diligence found sufficient where a plaintiff "filed his motion for leave to amend relatively soon after taking the deposition in which he first learned of the facts that he contends support the new claim he now wishes to assert." *Ghattas v. First National Bank of Layton*, No. 4:12-CV-2348 CAS, 2014 WL 222819, at *1 (E.D. Mo. Jan. 21, 2014). The delays the Eighth Circuit has found fatal are of a different order entirely—including in Defendants' own

authority. *See Freeman v. Busch*, 349 F.3d 582, 589 (8th Cir. 2003) (as Defendants describe it, a ten-month unexplained delay); *Sherman*, 532 F.3d at 717–18 (eight months after the facts were known); *Popoalii v. Correctional Medical Services*, 512 F.3d 488, 497 (8th Cir. 2008) (five to six months, unexplained).

The County's footnote asserting that everything was learned on June 2 is incorrect: the office-wide practice of unsupervised warrantless arrests and the untrained handoff of the investigation rest on Sergeant Stallman's July 21, 2026, testimony. (Dkt. 44-1 at 5–6.) And its reliance on the August 14, 2025, initial disclosures proves the opposite of diligence's absence: that disclosure said only that Sergeant Stallman knew about "his investigation into the complaints . . . prior to Deputy Lopez taking over." (Dkt. 48-1 at 2.) It disclosed nothing about supervision, warrant review, training, discipline, or the Sheriff's own decisions, the facts Count X pleads, and it was served while the motions to dismiss were pending. Knowing a witness exists is not knowing the claim. *Contra Barstad v. Murray County*, 420 F.3d 880, 883 (8th Cir. 2005) (movants "knew of the claims" at filing).

## II. The Law Enforcement Defendants Mistake Conforming Amendments for New Claims.

The Law Enforcement Defendants object that paragraphs 23, 64–70, 98, 160, and 164 add allegations against them "with no explanation." The Motion itself explains each one: they conform the pleading to the deposition record. (Dkt. 44 ¶ 4.) Every cited paragraph restates the Law Enforcement Defendants' own sworn testimony or matters of public record: Sheriff McNamee's testimony that he personally searched Emma's and A.W.'s bags, his role as on-scene commander, his approval of the press release, the absence of any post-incident discipline or corrective action, and the state court's removal of Deputy Lopez from the Brady-Giglio list. No count against any Law Enforcement Defendant is added or altered. A defendant needs no

discovery to investigate his own deposition testimony, and the resistance identifies none: it names not one witness, document, or subject it would pursue. A bare invocation of the closed discovery period is not prejudice, and prejudice is not reached absent a diligence failure in any event. *Sherman*, 532 F.3d at 717.

**III. The County's Expert-Designation Argument Is Answered by Plaintiffs' Standing Offer.**

The County newly claims prejudice because its expert deadline has passed. That deadline (May 8, 2026) expired before the depositions that supply Count X's factual basis were even taken, so under any scenario a training-standards expert would require a modest modification, relief Plaintiffs have never opposed. Plaintiffs' Motion offered precisely this accommodation (Dkt. 44 ¶ 6), and Plaintiffs confirm it here: they do not oppose leave for the County to designate a training-and-supervision expert, or any discrete supplemental discovery, on whatever schedule the Court sets. Nor is the claimed inability to "prepare for its defense" credible from a party that has already marshaled its training-and-supervision evidence and moved for summary judgment on the theory. The dispositive-motion deadline is seven weeks away; trial is seven months away. Finally, Plaintiffs assert that the claims in this case are so obvious that expert testimony is not needed. Plaintiffs did not retain a training-standards expert and Defendant does not have to rebut any expert opinions. Still, Plaintiffs do not object to Defendant disclosing a training-standards expert.

**IV. The Futility Argument Demands Trial Proof at the Pleading Stage and Misreads Count X.**

The County's futility argument applies the wrong lens and reads Count X too narrowly. By the County's own standard, futility means the amended complaint "could not withstand a

motion to dismiss under Rule 12(b)(6).” (Dkt. 48 at 4.) The question is whether Count X pleads a plausible claim, with all inferences drawn for Plaintiffs, not whether Plaintiffs can now prove “a pattern of prior conduct” by Deputy Lopez.

A Lopez-specific pattern is not the only path to *Monell* liability, and it is not the theory Count X pleads. First, Count X pleads custom: an office-wide practice of deputies making warrantless arrests during search warrant executions in their sole, unreviewed discretion (“normal practice,” in the deputies' sworn words) within a structure that had no sergeants, no lieutenants, and no review of warrant applications. A “continuing, widespread, persistent pattern” of misconduct met with policymaker indifference states a custom claim, *Ware v. Jackson County, Missouri*, 150 F.3d 873, 880 (8th Cir. 1998), and an office-wide practice is by definition not a single incident. Second, while a pattern is “ordinarily necessary,” *Connick v. Thompson*, 563 U.S. 51, 62 (2011), *Canton* preserves liability without one where the need for training or supervision is “so obvious, and the inadequacy so likely to result in the violation of constitutional rights,” that indifference may fairly be inferred. *City of Canton v. Harris*, 489 U.S. 378, 390 (1989). Count X pleads that narrow circumstance: the final policymaker personally assigned the office's first complex felony financial investigation to a deputy who had never investigated one, for scheduling convenience, with no review of his warrant application, no supervision of the investigation, unreviewed authority to arrest, and never asked about probable cause. Unlike the law-trained prosecutors in *Connick*, an untrained deputy left alone to make a felony-intent judgment is the actor *Canton*'s hypothetical contemplates. Third, Count X rests on the policymaker's own decisions (the assignment, the non-review, and the refusal to discipline, retrain, or change anything afterward) not on respondeat superior.

If the County believes Count X fails as a matter of law, the Rules give it a vehicle: a motion directed at the amended pleading. Futility at the leave stage asks only whether a claim is stated. Count X states one.

## CONCLUSION

Plaintiffs respectfully request that the Court grant leave to file the First Amended Complaint.

Dated: September 15, 2026

Respectfully Submitted:

***<u>/s/ Matthew Amarin</u>***
Matthew Amarin
Haytham Faraj
Law Offices of Haytham Faraj, PLLC
1935 W. Belmont Avenue
Chicago, IL 60657
Telephone: 312-635-0800
Haytham@FarajLaw.com
Matthew@Farajlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I, Matthew Amarin, hereby certify that on September 15, 2026, the foregoing document was electronically filed through the Court's CM-ECF system, which will send notice of electronic filing to all counsel of record.

/s/ Matthew Amarin